# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| E.S., an individual; | |
| Plaintiff | |
| -against- | CIVIL ACTION NO :3:20-CV-00050 |
| BEST WESTERN INTERNATIONAL, INC.; MARRIOTT INTERNATIONAL, INC.; EXTENDED STAY AMERICA, INC.; G6 HOSPITALITY, LLC; WYNDHAM HOTELS AND RESORTS, INC.; AND CHOICE HOTELS INTERNATIONAL, INC., | **COMPLAINT** **JURY TRIAL DEMANDED** |
| Defendants. | |

## COMPLAINT

COMES NOW the Plaintiff E.S., by and through the undersigned counsel, and respectfully submits her complaint for damages and makes the following averments.

## INTRODUCTION

1.      For years, sex trafficking ventures have brazenly operated in and out of hotels throughout this country.  Criminals parade their misconduct openly on hotel properties throughout the United States while the hotels and hospitality industry remain willfully blind to the criminal misconduct to continue earning a profit at the expense of human life, human rights, and human dignity.

2.      Extended Stay America, Inc. (hereinafter "Extended Stay America"), G6 Hospitality, LLC (hereinafter "G6"), Marriott International, Inc. (hereinafter "Marriott"), Best Western International, Inc. (hereinafter "Best Western"), Wyndham Hotels and Resorts, Inc. (hereinafter "Wyndham") and Choice Hotels International, Inc. (hereinafter "Choice Hotels") know and have known for more than a decade that sex trafficking repeatedly occurs under their

flag throughout the country.  Rather than taking timely and effective measures to thwart this epidemic, Extended Stay America, G6, Marriott, Best Western, Wyndham, La Quinta and Choice Hotels have instead chosen to ignore the open and obvious presence of sex trafficking on their properties, enjoying the profit from rooms rented for this explicit and apparent purpose.

3.    This action for damages is brought by the Plaintiff, a survivor of sex trafficking hereinafter identified by her initials E.S., under the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA").

4.    E.S. was first trafficked for commercial sex at the age of 21 years old in Fort Worth/Dallas, Texas. She was coerced into trafficking by a friend of her sister's as he promised her he would take care of her. He told her he knew of a way she could build a future for herself and her young daughter she just had to do what he said. Her trafficker coerced E.S. into sexual servitude under the façade of financial security and a better life for her daughter. Rather, her trafficker used E.S.'s ambition and desire for economic security to force her into sexual servitude.

5.    The Plaintiff now brings this action for damages against the Defendants listed herein.  Each of the Defendants, in violation of 18 U.S.C. § 1595, knowingly benefited from a venture that they knew, or at the very least should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a).

6.    E.S. was advertised on www.backpage.com against her will, physically tortured, and then sexually exploited under such duress at hotels in Arlington, Garland, Fort Worth, Grand Prairie, Dallas, Addison and Mesquite, Texas including the Baymont Inn®, Days Inn®, Super 8®, Microtel®, Motel 6®, La Quinta®, Best Western®, Wingate Hotel®, Howard Johnson®, Fairfield Inn and Suites®, Extended Stay America®, Studio 6®, La Quinta®  and Quality Inn®.

7.     As a direct and proximate result of the Defendants' consistent refusals to prevent human trafficking at their hotel properties, E.S. was sexually exploited and repeatedly victimized at hotels under the Defendants' flags between 2006 and 2011.

## PARTIES

8.     The Plaintiff, having moved to proceed anonymously,[1] and, herein, identified by her initials E.S., was only 21 years old when she was sold for sex and trafficked throughout the state of Texas.  The Plaintiff is a victim of trafficking pursuant to 22 U.S.C. §7102 (15) and 18 U.S.C. §1591 (a), and a victim of a "severe form of trafficking" as it is defined under 22 U.S.C §7102 (14).  The Plaintiff currently resides in Tarrant County, Texas.

9.     Defendant Wyndham Hotels and Resorts, Inc. (hereinafter "Wyndham") is one of the world's largest hotel companies and offers public lodging services directly or through its affiliates, subsidiaries, and franchisees. It is a Delaware corporation with its headquarters in Parsippany, New Jersey.

   a.   Baymont Inn® Super 8®, Microtel®, Wingate Hotel®, Days Inn®, and Howard Johnson® hotels are Wyndham Hotels.

   b.   As of 2018, La Quinta Holdings, Inc. is a wholly owned subsidiary of Defendant Wyndham Hotels and Resorts, Inc. Defendant Wyndham Hotels and Resorts, Inc. is the successor entity to La Quinta Holdings, Inc. and retains successor liability for the wrongful acts of the predecessor.

   c.   As a hotel operator, Defendant Wyndham controls the training and policies for its branded properties including the Baymont Inn® Super 8®, Microtel®,

---

[1] Contemporaneously with the Complaint, Plaintiff E.S. filed a Motion for Protective Order and Leave to Proceed Anonymously with Memorandum in Support based upon the nature of the allegations in the instant Complaint, which are of an inherently intimate and personal nature. That motion is pending. Undersigned Counsel will provide her identity to counsel for the Defendants upon proper effectuation of service.

Wingate Hotel®, Days Inn®, La Quinta® and Howard Johnson® hotels where E.S. was trafficked. Defendant Wyndham represents that it considers guest safety and security important and requires the hotels in its portfolio to comply with Wyndham brand standards and all local, state, and federal laws.[2]

d.   By and through its relationship with the staff at the Wyndham® Brand locations where E.S. was trafficked, and the perpetrator who trafficked E.S. at Baymont Inn® Super 8®, Microtel®, Wingate Hotel®, Days Inn®, La Quinta® and Howard Johnson® while registered as a guest there, Defendant Wyndham knowingly benefited, or received anything of value, from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking.

e.   Wyndham receives a percentage of the gross room revenue from the money generated by the operations of all Baymont Inn® Super 8®, Microtel®, Wingate Hotel®, Days Inn®, La Quinta® and Howard Johnson® hotels, including a percentage of the revenue generated from the rate charged for the rooms in which the Plaintiff was sex trafficked.

f.   Wyndham owns, supervises, and/or operates the Baymont Inn® hotel located at 2401 Diplomacy Drive in Arlington, the Super 8® hotels located at 1905 West Pleasant Ridge Road and at 2710 East Abram Street in Arlington, the Microtel® hotel located at 1901 Pendleton Drive in Garland, the Wingate® hotel located at 8650 North Stemmons Freeway in Dallas, the Days Inn® hotel located at 1901 West Pleasant Ridge Road in Arlington, the La Quinta®

---

[2] Best Western International Human Rights Policy, https://www.bestwestern.com/en_US/about/press-media/best-western-human-rights-policy.html (last visited Nov. 20, 2019).

hotels located at 4900 Bryant Irvin Road and 4700 North Freeway in Fort Worth, and 4001 Scots Legacy Drive in Arlington, and the Howard Johnson® hotel located at 2001 East Copeland Road in Arlington, Texas.

g.   Wyndham is subject to the jurisdiction of this Court because it regularly transacts business in Texas, operates dozens of hotels in Texas, including the Baymont Inn® Super 8®, Microtel®, Wingate Hotel®, Days Inn®, and Howard Johnson® hotels listed above, contracts to supply services in Texas, caused indivisible injuries to the Plaintiff in Texas, and profited from an illegal sex trafficking venture at Baymont Inn® Super 8®, Microtel®, Wingate Hotel®, Days Inn®, and Howard Johnson® hotels located in Texas.

10.   Defendant Choice Hotels International, Inc. (hereinafter "Choice Hotels") is one of the largest hotel companies in the world offering public lodging services directly or through its affiliates, subsidiaries, and franchisees. It is a Delaware corporation with its principle place of business located at 1 Choice Hotels Circle in Rockville, Maryland. Choice Hotels is registered with the Secretary of State to conduct business in the State of Texas.

a.   Quality Inn® hotels are Choice Hotels.

b.   As a hotel operator, Defendant Choice Hotels controls the training and policies for its branded properties including the Quality Inn® hotels where E.S. was trafficked. Defendant Choice Hotels maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with Choice brand standards and all local, state, and federal laws. [3]

c.   By and through its relationship with the staff at the Quality Inn® hotels where E.S. was trafficked and the perpetrator who trafficked E.S. at the

---

[3] Choice Hotels International Inc., Human Rights Policy, https://www.choicehotels.com/about/diversity/human-rights

Quality Inn® hotels while registered as a guest there, Defendant Choice Hotels knowingly benefited, or received anything of value, from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking.

d.  Choice Hotels receives a percentage of the gross room revenue from the money generated by the operations of Quality Inn® hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked.

e.  Choice Hotels owns, supervises, and/or operates the Quality Inn® hotels located at 121 East Interstate 20 in Arlington, 3891 South Great Southwest Parkway in Grand Prairie, Texas, 923 Windbell Circle in Mesquite, 4555 Belt Line Road, in Addison, and 10835 Composite Drive in Dallas, Texas.

f.  Choice Hotels is subject to the jurisdiction of this Court because it regularly transacts business in Texas, operates dozens of hotels in Texas, including the Quality Inn® hotels listed above, contracts to supply services in Texas, caused indivisible injuries to the Plaintiff in Texas, and profited from an illegal sex trafficking venture at Choice Hotels owned Quality Inn® locations across the state of Texas.

11.    Defendant Best Western International, Inc. (hereinafter "Best Western") is one of the largest hotel companies in the world offering public lodging services directly or through its affiliates, subsidiaries, and franchisees.  It is an Arizona corporation with its principle place of business located at 6201 N. 24th Parkway in Phoenix, Arizona. Best Western is registered with the Secretary of State to conduct business in the State of Texas.

a.  Best Western® is a Best Western brand property.

b.  As a hotel operator, Defendant Best Western controls the training and policies for its branded properties including the Best Western® hotel where E.S. was trafficked. Defendant Best Western represents that it considers guest safety and security important and requires the hotels in its portfolio to comply with Best Western brand standards and all local, state, and federal laws.[4]

c.  By and through its relationship with the staff at the Best Western® where E.S. was trafficked, and the perpetrator who trafficked E.S. at the Best Western® while registered as a guest there, Defendant Best Western knowingly benefited, or received anything of value, from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking.

d.  Best Western receives a percentage of the gross room revenue from the money generated by the operations of all Best Western® hotels, including a percentage of the revenue generated from the rate charged for the rooms in which the Plaintiff was sex trafficked.

e.  Best Western owns, supervises, and/or operates the Best Western® hotels located at 201 West Loop 820 North in Fort Worth and at 2075 North State Highway 360, Grand Prairie, Texas.

f.  Best Western is subject to the jurisdiction of this Court because it regularly transacts business in Texas, operates dozens of hotels in Texas, including the Best Western® locations listed above, contracts to supply services in Texas,

---

[4] Best Western International Human Rights Policy, https://www.bestwestern.com/en_US/about/press-media/best-western-human-rights-policy.html (last visited Nov. 20, 2019).

caused indivisible injuries to the Plaintiff in Texas, and profited from an illegal sex trafficking venture at multiple Best Western® locations in the state of Texas.

12.     Defendant Marriott International, Inc. (hereinafter "Marriott") is another of the largest hotel companies in the world offering public lodging services directly or through its affiliates, subsidiaries, and franchisees.  It is a Delaware corporation with its principle place of business located at 10400 Fernwood Road in Bethesda, Maryland.  Marriott is registered with the Secretary of State to do business in the State of Texas.

a.  Fairfield Inn® hotels are Marriott hotels.

b.  As a hotel operator, Defendant Marriott controls the training and policies for its branded properties including the Fairfield Inn® hotel where E.S. was trafficked.  Defendant Marriott represents that it considers guest safety and security important and requires the hotels in its portfolio to comply with Marriott brand standards and all local, state, and federal laws.[5]

c.  By and through its relationship with the staff at the Fairfield Inn® where E.S. was trafficked and the perpetrator who trafficked E.S. at the Fairfield Inn® while registered as a guest there, Defendant Marriott knowingly benefited, or received anything of value, from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking.

d.  Marriott receives a percentage of the gross room revenue from the money generated by the operations of Fairfield Inn® hotels, including a percentage of the revenue generated from the rate charged for the rooms in which the

---

[5] Marriott International Inc., Human Rights Policy Statement (July 2017) available at
https://www.marriott.com/Multimedia/PDF/Corporate/HumanRightsStatement.pdf (last visited Nov. 20, 2019).

Plaintiff was sex trafficked.

    e.  Marriott owns, supervises, and/or operates the Fairfield Inn® hotels located at 2500 E Lamar Boulevard in Arlington and at 2110 Market Center Boulevard and North Stemmons Freeway in Dallas, Texas.

    f.  Marriott is subject to the jurisdiction of this Court because it regularly transacts business in Colorado, operates dozens of hotels in Colorado, including the Fairfield Inn and Suites® locations listed above, contracts to supply services in Texas, caused indivisible injuries to the Plaintiff in Texas, and profited from an illegal sex trafficking venture at multiple Fairfield Inn and Suites® in the state of Texas.

13.    Defendant G6 Hospitality LLC ("G6") is again one of the largest hotel brands in the world offering public lodging services directly or through its affiliates, subsidiaries, and franchisees. It is a Delaware corporation with its principle place of business located at 4001 International Parkway in Carrollton, Texas.

    a.  Motel 6® and Studio 6® hotels are G6 Hospitality Hotels.

    b.  As a hotel operator, Defendant G6 Hospitality controls the training and policies for its branded properties including the Motel 6® and Studio 6® hotels where E.S. was trafficked. Defendant G6 Hospitality maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with G6 brand standards and all local, state, and federal laws.[6]

    c.  By and through its relationship with the staff at the Motel 6® and Studio 6®

---

[6] G6 Hospitality International, Inc., Our Impact, https://g6hospitality.com/about-us/our-impact-2/ (last visited Dec. 5, 2019).

hotels where E.S. was trafficked and the perpetrator who trafficked E.S. at the Motel 6® and Studio 6® hotels while registered as a guest there, Defendant G6 Hospitality knowingly benefited, or received anything of value, from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking.

d.  G6 Hospitality receives a percentage of the gross room revenue from the money generated by the operations of Motel 6® and Studio 6® hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked.

e.  G6 Hospitality owns, supervises, and/or operates the Motel 6® hotels located at 4201 South Freeway and 10675 South Freeway in Fort Worth, and 1108 North Highway 360 in Grand Prairie, Texas. G6 Hospitality also owns the Studio 6® hotels located at 1607 North Watson Road and 1980 West Pleasant Ridge Road in Arlington, Texas.

f.  G6 Hospitality is subject to the jurisdiction of this Court because it regularly transacts business in Texas, operates dozens of hotels in Texas, including the Motel 6® and Studio 6® hotels listed above, contracts to supply services in Texas, caused indivisible injuries to the Plaintiff in Texas, and profited from an illegal sex trafficking venture at G6 owned Motel 6® and Studio 6® locations across the state of Texas.

14.  Defendant Extended Stay America, Inc. ("Extended Stay America") offers offering public lodging services directly or through its affiliates, subsidiaries, and franchisees. It is a Delaware corporation with its principle place of business located at 11525 N Community

House Rd #100 in Charlotte, North Carolina. It is registered with the Secretary of State to do business in the State of Texas.

    a.  Extended Stay America® hotels are Extended Stay America hotels.

    b.  As a hotel operator, Defendant Extended Stay America controls the training and policies for its hotels including the hotel where E.S. was trafficked. Defendant Extended Stay America maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with Extended Stay America brand standards and all local, state, and federal laws. [7]

    c.  By and through its relationship with the staff at the Extended Stay America hotel where E.S. was trafficked and the perpetrator who trafficked E.S. at the Extended Stay America hotel while registered as a guest there, Defendant Extended Stay America knowingly benefited, or received anything of value, from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking.

    d.  Extended Stay America receives a percentage of the gross room revenue from the money generated by the operations Extended Stay America hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked.

    e.  Extended Stay America owns, supervises, and/or operates the Extended Stay America hotel located at 1221 North Watson Road, Arlington, Texas.

    f.  Extended Stay America is subject to the jurisdiction of this Court because it

---

[7] Extended Stay America, Inc., Social Responsibility Tear Sheet, https://www.aboutstay.com/static-files/46bac423-97b6-45f3-85c4-f0667d054e08. See also, Extended Stay America, Inc., Code of Business Conduct and Ethics, https://www.aboutstay.com/static-files/03473452-8291-47f2-9245-3b8fd21253fl (last visited 1/8/2020).

regularly transacts business in Texas, operates dozens of hotels in Texas, including the Extended Stay America hotel listed above, contracts to supply services in Texas, caused indivisible injuries to the Plaintiff in Texas, and profited from an illegal sex trafficking venture at Extended Stay America locations in Texas.

15.     Whenever reference is made in this Complaint to any act, deed or conduct of the Defendants, the allegation is that the Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendants.

## JURISDICTION AND VENUE

16.     This Honorable Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 because this action arises under the Constitution, laws, or treaties of the United States (with an amount in controversy that exceeds $75,000.)

17.     Venue is proper in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, occurred in the judicial district where this action is brought.

## SEX TRAFFICKING UNDER FEDERAL LAW

18.     Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion."  This definition combines the three elements of sex trafficking as a

criminal offense: the act, the means, and the purpose.

19.     To best understand the mechanism by which sex trafficking ventures are prohibited by federal criminal law, it's best to address these elements in the reverse.  Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. § 1589 and §1590.  The crime of slavery can then be divided into the two (2) elements remaining: the act and the means.  The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a violation of 18 U.S.C. §1590, while the *means* is labor "obtained or provided by force, fraud or coercion" and is codified as a violation of 18 U.S.C. §1589.

20.     Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a long-recognized and familiar atrocity.

21.     Pursuant to 18 U.S.C. §1591(a), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion – or performed by a minor under the age of 18 – are guilty of sex trafficking.  This includes, at a minimum, ***both*** the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work ***and*** the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.[8]

---

[8] While the 'pimps' or 'providers' are often referred to as the 'traffickers' and the purchasers are referenced as the 'Johns', 'tricks', or 'buyers' [and such nomenclature is used herein], under federal law ***both*** categories are 'traffickers'.

## FACTUAL ALLEGATIONS

### A.  THE HOSPITALITY INDUSTRY'S PARTICIPATION
### IN THE SEX TRAFFICKING INDUSTRY

*"75% of survivors responding to Polaris's survey reported coming into contact with hotels at some point during their exploitation…Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from hotel staff."*

*-The Polaris Project[9]*

22.     Human trafficking is the world's fastest growing crime.[10]  While the term 'human trafficking' incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of ***all*** illegal drugs.[11]

23.     Sex traffickers, or 'pimps', use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

24.     The hospitality industry plays a crucial role in the sex trade.[12]   The trope of the "no-tell motel" is certainly not a new one.  Hotels have long profited from their reputations as havens of privacy and discretion for the offending.  Hotels offer anonymity and non-traceability, making them ideal venues for crime and sex trafficking in particular.

25.     According to National Human Trafficking Hotline statistics, hotels are the top-

---

[9] *Recommendations for Hotels and Motels*, THE POLARIS PROJECT, https://polarisproject.org/hotels-motels-recommendations (last visited June 19, 2019).
[10] *Human Trafficking is the World's Fastest Growing Crime*, THE ADVISORY BOARD (May 22, 2017, 9:30 AM), https://www.advisory.com/daily-briefing/2017/05/22/human-trafficking.
[11] *Profits and Poverty: The Economics of Forced Labor*, INTERNATIONAL LABOR ORGANIZATION (May 24, 2014), http://www.ilo.org/global/publications/ilo-bookstore/order-online/books/WCMS_243391/lang--en/index.htm.
[12] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

reported venue, even over commercial front brothels, where sex trafficking acts occur.[13] Traffickers and buyers alike frequently use hotel rooms to exploit victims.

26.     Traffickers use hotels as the hub of their operations. Inside, the victims are harbored, raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex.  This is referred to as an 'in call'.

27.     Hotels are also the venue of choice for buyers seeking an 'out call,' wherein the buyer rents a hotel room and the trafficker delivers the victim to the buyer's room to complete the sordid transaction.  Unsurprisingly, those on the demand side of this transaction (i.e. those purchasing sex) typically choose to engage in trafficking away from their home, naturally leading to the increased involvement of hotels.  In New York City alone, 45% of all reported sexual exploitation took place in hotels, including the Ritz Carlton and the Plaza.[14]

28.     The problem is industry wide.  In the United States, as much as 63% of all trafficking incidents happen in hotels ranging from luxury to economy.[15]  Even estimates by attorneys *for* the hospitality industry indicate that eight (8) out of ten (10) arrests for human trafficking occur in or around hotels.[16]

29.     Due to the overall complacency of the hospitality industry on addressing the issue, hotels are *the* venue of choice for sex trafficking.[17]  Traffickers and buyers capitalize on the hotel industry's general refusal to adopt and enforce companywide anti-trafficking policies from the corporate to the property level, train staff on what to look for and how to respond,

---

[13] *National Human Trafficking Hotline Statistics*, THE POLARIS PROJECT (2016), https://polarisproject.org/resources/2016-hotline statistics.
[14] Giovanna L. C. Cavagnaro, *Sex Trafficking: The hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.
[15] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015).
[16] Rich Keating, *Human Trafficking: What It Is And How It Impacts The Hospitality Industry*, Presentation Delivered At AHIA Sprint Conference 2013, Washington, D.C., *available at* http://www.ahiattorneys.org/aws/AHIA/asset_manager/get_file/92983 (last visited Mar. 1, 2019).
[17] *Hotels Initiative*, THE POLARIS PROJECT, https://polarisproject.org/initiatives/hotels (last visited June 19, 2019).

and/or establish safe and secure reporting mechanisms for those at the point of sale.

30.     Every day, thousands of hotel employees witness manifestations of sex trafficking and commercial exploitation.  Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur.

31.     But aside from their unique position in this epidemic, hotels and motels have the highest obligation to protect their guests from known dangers, including sex trafficking and sexual exploitation, and should be held accountable when they fail to comply.  As aptly stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."[18]

32.     Training hotel staff to identify the signs of sex trafficking and sexual exploitation is a critical and obvious legal obligation for the hospitality industry.  The presence of sex trafficking and sexual exploitation in a hotel is frequently an obvious occurrence and, although unutilized, underutilized, or ineffectively utilized, numerous well-researched trainings and toolkits have been published to the hotel industry over the last decade to help hotel staff in every position to identify the signs.[19]

33.     From check-in to check-out there are a number of indicators that traffickers and their victims exhibit during their stay at a hotel.  With proper training and the implementation of reasonable security measures, hospitality companies could prevent regular sex trafficking under their flag.

34.     Obvious signs of sex trafficking at a hotel may include: an excess of condoms in

---

[18] Giavanna L. C. Cavagnaro, *Sex trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.
[19] DEPARTMENT OF HOMELAND SECURITY, *Blue Campaign Toolkit*, attached as "Exhibit A." Available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

rooms, individuals carrying or flashing large amounts of cash, excessive amounts of cash stored in the room, renting two (2) rooms next door to each other, declining room service for several consecutive days, significant foot traffic in and out of room(s), men traveling with multiple women who appear unrelated, women known to be staying in rooms without leaving, women displaying physical injuries or signs of fear and anxiety, guests checking in with little or no luggage, hotel guests who prevent another individual from speaking for themselves, or a guest controlling another's identification documents.[20]

35.     Obviously, hotel staff who have undergone training are more aware of sex trafficking when it happens and are more willing to report it than hotel staff who have not been trained.[21] Thus, hospitality companies are obligated to adopt policies and procedures related to sex trafficking and to enforce these policies and procedures as brand standard through to the property level.

36.     Hospitality companies can and should mandate that *all* staff working at *all* hotel properties across their brand complete sex trafficking training.[22]

37.     In 2008, 18 U.S.C. § 1595 effectively required all companies with a peculiar proximity to human trafficking to use reasonable measures and conduct proactive audits to ensure that they were not profiting from what they *should know* are human trafficking ventures.

38.     The hospitality industry has been cognizant of their role and responsibilities in the sex trafficking industry for years.

39.     In 2011, Wyndham trained only some of its employees to look for signs of

---

[20] Id. See also, Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, THE INSTITUTE TO ADDRESS CRIMINAL SEXUAL EXPLOITATION, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.

[21] Giavanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

[22] Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, The Institute to Address Criminal Sexual Exploitation, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.

trafficking.[23]

40.     In 2012, an anti-trafficking coalition alerted Choice Hotels of the likelihood of sex trafficking during the London Olympics, and inquired about the companies anti-trafficking policies, while urging immediate action regarding trafficking.[24]

41.     Marriott International claims it amended its Human Rights Policy as early as 2006 to reflect growing concerns regarding human trafficking and reviews the policy annually. To date the policy merely states "Marriott supports the elimination of all forms of forced, bonded or compulsory labor and provides associate training on human trafficking awareness and prevention." [25]

42.     Choice Hotels has supported the anti-trafficking group Polaris since 2010 and in a partnership with EPCAT ((End Child Prostitution, Pornography and Trafficking of Children for Sexual Purposes)) developed a training module in 2010 for hotel management and staff.[26]

43.     In 2012, an anti-trafficking coalition alerted and instructed Accor, Best Western, British Airways, Carlson, Choice Hotels, Hilton, Hyatt, Intercontinental Hotels Group, Marriott, Starwood, Thomas Cook, Whitbread, and Wyndham of the likelihood of sex trafficking during the London Olympics, and inquired about the companies anti-trafficking policies, while urging immediate action regarding trafficking.[27]

---

[23] Katie Lobosco, *Super 8 workers trained to spot sex trafficking*, CNN BUSINESS (Nov. 18, 2014), https://money.cnn.com/2014/11/18/news/companies/days-inn-sex-trafficking/.
[24] *Corporate Strategy to Address Human Trafficking: Investor Recommendations for London Olympic Sponsors and Hospitality Companies, Christian Brothers Investment Services*, CBIS, http://cbisonline.com/us/wp-content/uploads/sites/2/2012/09/FINAL_OlympicsReport_9_28.pdf (last visited June 19, 2019).
[25] Our Commitment to Human Rights, MARRIOTT INTERNATIONAL INC. available at https://www.marriott.com/Multimedia/PDF/Corporate/HumanRightsCommitment.pdf (last visited Nov. 20, 2019) citing Marriott International, Inc.'s Human Rights Policy Statement available at https://www.marriott.com/Multimedia/PDF/Corporate/HumanRightsStatement.pdf (last visited Nov. 20, 2019).
[26] *Human Rights Policy*, CHOICE HOTELS, https://www.choicehotels.com/about/responsibility/human-rights-policy (last visited June 6, 2019).
[27] *Corporate Strategy to Address Human Trafficking: Investor Recommendations for London Olympic Sponsors and Hospitality Companies, Christian Brothers Investment Services*, CBIS, http://cbisonline.com/us/wp-content/uploads/sites/2/2012/09/FINAL_OlympicsReport_9_28.pdf (last visited June 19, 2019).

44.     A number of nationwide campaigns recognized the acute issue of human trafficking in the hotel industry and the lack of internal policies to address the issue, and took initiative as early as 1997 with the United Nations Blue Heart Campaign, and then domestically in 2010 with the Department of Homeland Security's Blue Campaign.[28]   These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released online resources and toolkits publicly accessible to any entity concerned with human trafficking.[29]

45.     Hospitality companies have both the power and responsibility to make sex trafficking difficult for the offenders. Yet, they either repeatedly fail to heed the call or repeatedly failed to execute their own policies.  Instead, each continues to facilitate these crimes at their hotels, content to direct their efforts solely to profit and the bottom line.

###     B.     THE DEFENDANTS CONTROL THE HOSPITALITY INDUSTRY

46.     Hotel brands or flags lend their name and likeness to third party owners, while the building and operations are run by a franchisee or a third party management company under the brands' control. In return, the parent brand exchanges the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning a franchise contract and still profits from putting heads in beds.

47.     The average consumer does not see this relationship.  The parent brand gives the local property its identity.   It provides signage on and in front of the building that assures customers that if they check into that hotel they can expect the standards consistent with the parent hotel brand.  The same brand emblazoned on everything in the hotel from the pens in the

---

[28] *DHS Blue Campaign Five Year Milestone*, DEPARTMENT OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone.
[29] *Human Trafficking and the Hospitality Industry*, DEPARTMENT OF HOMELAND SECURITY, https://www.dhs.gov/blue-campaign/hospitalityindustry (last visited June 19, 2019).

bedside tables to the staff uniforms at the front desk.

48.     In addition to brand recognition, a marketing organization, hotel listings in the Global Distribution System (GDS) and other online travel agency databases, the brand provides the local hotel with access to its brand wide central reservation system, 800 number, revenue management tools, world-class loyalty programs, and a website.  Thus, booking and room reservations are controlled by the corporate parent brand.[30]

49.     The local hotel typically pays around 10% of their total revenue back to the parent hotel brand and is required to develop and maintain the property in accordance with the parent brand's standards.

50.     The parent brand may enforce these standards through periodic inspections and even termination of the agreement if the local hotel is found to be inadequate.  The right of the parent hotel brand to enforce their brand standards is also their responsibility.

51.     At the time of the incidents alleged herein:

a.  Defendant Best Western International, Inc. owned and controlled the Best Western® brand.

b.  Defendant Wyndham Hotels and Resorts owned and controlled the Baymont Inn® Super 8®, Microtel®, Wingate Hotel®, Days Inn®, Howard Johnson® brands.

c.  Defendant Extended Stay America, Inc. owned and controlled the Extended Stay America® brand.

d.  Defendant G6 Hospitality LLC owned and controlled the Studio 6® and Motel 6® brands.

---

[30] Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (April 10, 2018) https://lodgingmagazine.com/the-origins-and-growth-of-franchising-in-the-hotel-industry/.

    e.   Defendant Choice Hotels International owned and controlled the Quality Inn® brand.

    f.   La Quinta Holdings, Inc. owned and controlled the La Quinta® brand.[31]

    g.   Defendant Marriott International, Inc. owned and controlled the Fairfield Inn® brand.

52.    Parent hotel brands may kick delinquent hotels out of their system but it is at the expense of terminating their royalty payments.

## C.  THE DEFENDANTS' WILLFUL BLINDNESS TO SEX TRAFFICKING AT THEIR BRANDED HOTELS

53.    Defendants Best Western, G6 Hospitality, Extended Stay America, Choice Hotels, Marriott, and Wyndham have been on notice of repeated incidences of sex trafficking occurring across their Best Western®, Baymont Inn®, Super 8®, Microtel®, Days Inn®, Howard Johnson®, Wingate Hotel®, La Quinta®, Studio 6®, Motel 6®, Extended Stay America®, Quality Inn®, and Fairfield Inn® hotels yet these brand managers failed to take the necessary action to prevent sex trafficking within their brand and continue to fail.

54.    BEST WESTERN INTERNATIONAL, INC ("BEST WESTERN"):

    a.   Defendant Best Western controls, owns, supervises, or operates the Best Western® located at 201 West Loop 820 North in Fort Worth and at 2075 North State Highway 360 in Grand Prairie, Texas.

    b.   Founded in 1946, Best Western represents that they have more than seventy-three (73) years of experience in managing successful brands. From all of their Best Western® properties, Defendant Best Western receives an application fee, a lump sum payment, royalties, and other ongoing financial

---

[31] La Quinta Holdings, Inc. is now a wholly owned subsidiary of Defendant Wyndham Hotels and Resorts, Inc.

benefits.

c.   Defendant Best Western knew or should have known that the Best Western®
hotels where Plaintiff E.S. was trafficked for commercial sex were in areas
known for a high incidence of crime and prone to sex trafficking activity on
and around the hotel premises, including when Plaintiff E.S. was trafficked.

d.   Despite having knowledge of the extensive prostitution and sex trafficking
that occurs at hotels and specifically their hotels, Defendant Best Western has
repeatedly failed to thwart these activities.

e.   Defendant Best Western can exercise control over Best Western® hotels by:

i.   distributing information to assist employees in identifying human
trafficking;

ii.   providing a process for escalating human trafficking concerns within the
organization;

iii.   requiring all employees to attend training related to human trafficking;

iv.   providing new hire orientation on human rights and corporate
responsibility;

v.   providing training and education to Best Western® branded hotels through
webinars, seminars, conferences, and online portals;

vi.   developing and holding ongoing training sessions on human trafficking;

vii.   conducting audits of training protocols; or

viii.   providing checklists, escalation protocols and information to property
management staff; or tracking performance indicators and key metrics on
human trafficking prevention.

f.  Defendant Best Western is in an actual and/or apparent agency relationship with its Best Western® hotels offering public lodging services. This agency relationship was created and is maintained through Defendant Best Western's exercise of an ongoing and systemic right of control over Best Western® hotels by Defendant Best Western's operations, including the means and methods of how Best Western® hotels conduct daily business including:

   i.  hosting online bookings on Defendant Best Western's domain;

   ii.  requiring Best Western® hotels to use Defendant Best Western's customer rewards program;

   iii.  setting parameters on employee wages;

   iv.  making employment decisions;

   v.  advertising for employment;

   vi.  sharing profits;

   vii.  standardized training methods for employees;

   viii.  building and maintaining the facility in a manner specified by Best Western;

   ix.  standardized or strict rules of operation;

   x.  regular inspection of the facility and operation by Best Western;

   xi.  fixing prices; or

   xii.  other actions that deprive Best Western® hotels of any independence in business operations.

g.  Apparent agency also exists between Defendant Best Western and Best Western® hotels. Defendant Best Western holds out Best Western® hotels to

the public as their direct alter-ego each possessing authority to act on the other's behalf.

h.  Given Defendant Best Western's public statements on behalf of its brand and the control it assumed in educating, implementing, and directing its hotels, Defendant Best Western breached its duties in the following ways:

   i.  did not adequately distribute information to employees on identifying human trafficking;

   ii.  failed to provide a process for escalating human trafficking concerns within the organization;

   iii.  failed to mandate all managers, employees, or owners attend training on identifying human trafficking;

   iv.  failed to provide new hire orientation on human rights and corporate responsibility;

   v.  failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

   vi.  failed to develop, hold, and require ongoing training sessions on human trafficking; or

   vii.  failed to provide checklists, escalation protocols and information to property management staff, or tracking performance indicators and key metrics on human trafficking prevention.

i.  For years, Defendant Best Western has demonstrated willful blindness to the rampant sex trafficking occurring throughout its Best Western® brand across the country. This entrenched apathy to the real risk of sex trafficking allowed

24

the exploitation of Plaintiff E.S. at a Best Western® that forms the basis for this complaint.

   i.   In February 2009, six (6) arrests were made for sex trafficking at a Best Western® in Clackamas, Oregon.[32]

   ii.   In May 2011, a man was arrested and criminally charged for sex trafficking a fifteen (15) year old girl at a Best Western® in Quincy, Massachusetts.[33]

   iii.   In December 2013, a man was arrested for trafficking women out of a Best Western® in Rockville, Maryland.[34]

   iv.   In 2014, the city of Columbus, Ohio brought a nuisance claim for allowing drug deals and sex trafficking at a Best Western® in Columbus, Ohio[35]

   v.   In February 2015, a man was arrested for running a sex trafficking operation out of a Best Western® in Roseville, California.[36]

   vi.   In July 2015, a man was arrested for trafficking women out of a Best Western® in King of Prussia, Pennsylvania.[37]

   vii.   In December 2015, a man was arrested for trafficking a 15 year-old out of a Best Western® in South Plainfield, New Jersey.[38]

   viii.   In December 2016, two (2) men were arrested for sex trafficking women

---

[32] https://www.oregonlive.com/clackamascounty/2009/02/girl_17_found_in_clackamas_pro.html
[33] http://archive.boston.com/news/local/massachusetts/articles/2011/05/21/man_charged_with_abducting_teen_and_forcing_her_into_prostitution/.
[34] https://www.nbcwashington.com/news/local/Inmate-May-Have-Run-Prostitution-Ring-From-Jail-236453261.html
[35] https://www.youtube.com/watch?v=tQ0avWxGHsI
[36] http://www.thepresstribune.com/article/2/06/15/roseville-police-.
[37] https://patch.com/pennsylvania/norristown/norristown-area-prostitution-sentencings-are-tuesday-0
[38] https://www.nj.com/union/2015/12/plainfield_man_who_recruited_girl_for_prostitution.html

out of a Best Western® in Nashville, Tennessee.[39]

ix. In May 2016, thirty-three (33) individuals, including two (2) pastors were arrested on prostitution and trafficking charges for trafficking minors out of a Best Western® in Knoxville, Tennessee.[40]

x. In September 2016, a man was arrested at a Best Western® in Bensalem, Pennsylvania for trafficking four women. [41]

xi. In April 2017, two (2) people were arrested for sex trafficking a minor at a Best Western® in Denton, Maryland.[42]

xii. In July 2017, a man was arrested after trafficking three minors at a Best Western® in Woodlawn, Maryland.[43]

xiii.  In October 2017, a sixteen (16) year old girl was rescued from a Best Western® in Arlington, Virginia, where she was being sex trafficked.[44]

xiv. In December 2018, a husband and wife were arrested for engaging in an interstate sex trafficking scheme at a Best Western® in Portsmouth, New Hampshire.[45]

xv. In March 2018, a man was investigated for recruiting high school students to participate in his sex trafficking ring. Police arrested him and at a Best Western® in Oklahoma City, Oklahoma with a woman he was selling for sexual favors.[46]

---

[39] https://fox17.com/community/nashville-neighborhood-watch/man-swallows-marijuana-cigarette-during-nashvilleprostitution-sting-at-hotel
[40] https://www.wspa.com/news/2-pastors-charged-with-human-trafficking-among-32-arrested-during-sting/1018484391
[41] https://patch.com/pennsylvania/bensalem/pimp-who-ran-prostitution-operation-bensalem-motel-headed-state-prison
[42] https://www.wmdt.com/2017/04/two-facing-human-trafficking-charges-for-reportedly-prostituting-child-fromdenton-hotel/
[43] https://www.baltimoresun.com/news/maryland/crime/bs-md-matthew-brown-sentencing-20170720-story.html
[44] https://www.wusa9.com/article/news/local/2-men-plead-guilty-to-two-different-child-sex-traffickingoperations/484712778
[45] https://www.seacoastonline.com/news/20181214/husband-wife-charged-in-sex-trafficking-prostitution-scheme
[46] https://www.edmondsun.com/news/prostitution-ring-targets-santa-fe-students/article_e07be414-23f2-11e8-9b32-ffcbb9a0f9aa.html

55.   G6 HOSPITALITY, LLC ("G6 HOSPITALITY"):

a.   Defendant G6 Hospitality controls, owns, supervises, or operates the Motel 6® hotels located at 4201 South Freeway and 10675 South Freeway in Fort Worth, and 1108 North Highway 360 in Grand Prairie, Texas. Defendant G6 Hospitality also controls, owns, supervises, or operates the Studio 6® hotels located at 1607 North Watson Road and 1980 West Pleasant Ridge Road in Arlington, Texas.

b.   G6 Hospitality failed to implement and enforce any of their own policies and protect Plaintiff E.S. from being trafficked.

c.   Founded in 1962, G6 Hospitality represents that they have more than fifty-seven years of experience in managing successful brands. From all of their Motel 6® and Studio 6® properties, Defendant Best Western receives an application fee, a lump sum payment, royalties, and other ongoing financial benefits.

d.   Defendant G6 Hospitality knew or should have known that the Motel 6® and Studio 6® hotels where Plaintiff E.S. was trafficked for commercial sex were in areas known for a high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff E.S. was trafficked.

e.   Despite having knowledge of the extensive prostitution and sex trafficking that occurs at hotels and specifically their hotels, Defendant G6 Hospitality has repeatedly failed to thwart these activities.

f.   Defendant G6 Hospitality can exercise control over Motel 6® and Studio 6®

27

hotels by:

    i.   distributing information to assist employees in identifying human trafficking;

    ii.  providing a process for escalating human trafficking concerns within the organization;

    iii. requiring all employees to attend training related to human trafficking;

    iv. providing new hire orientation on human rights and corporate responsibility;

    v.  providing training and education to Motel 6® and Studio 6® hotels through webinars, seminars, conferences, and online portals;

    vi. developing and holding ongoing training sessions on human trafficking;

    vii. conducting audits of training protocols; or

    viii.  providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

    g.  Defendant G6 Hospitality is in an actual and/or apparent agency relationship with its Motel 6® and Studio 6® hotels offering public lodging services. This agency relationship was created and is maintained through Defendant G6 Hospitality's exercise of an ongoing and systemic right of control over Motel 6® and Studio 6® hotels by Defendant G6 Hospitality's operations, including the means and methods of how Motel 6® and Studio 6® hotels conduct daily business including:

i.  hosting online bookings on Defendant G6 Hospitality's domain;

ii.  requiring Motel 6® and Studio 6® hotels to use Defendant G6 Hospitality's customer rewards program;

iii.  setting parameters on employee wages;

iv.  making employment decisions;

v.  advertising for employment;

vi.  sharing profits;

vii.  standardized training methods for employees;

viii.  building and maintaining the facility in a manner specified by G6 Hospitality,

ix.  standardized or strict rules of operation;

x.  regular inspection of the facility and operation by G6 Hospitality;

xi.  fixing prices; or

xii.  other actions that deprive Motel 6® and Studio 6® hotels of any independence in their business operations.

h.  Apparent agency also exists between Defendant G6 Hospitality and Motel 6® and Studio 6® hotels. Defendant G6 Hospitality holds out Motel 6® and Studio 6® hotels to the public as their direct alter-ego each possessing authority to act on the other's behalf.

i.  Given Defendant G6 Hospitality's public statements on behalf of its brand and the control it assumed in educating, implementing, and directing its hotels, Defendant G6 Hospitality breached its duties in the following ways:

      i.  Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

     ii.  Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

    iii.  Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

    iv.  Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

     v.  Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    vi.  Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; or

   vii.  Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

j.  For years, Defendant G6 Hospitality has demonstrated willful blindness to the rampant sex trafficking occurring throughout its Motel 6® and Studio 6® hotels across the country. This entrenched apathy to the real risk of sex trafficking allowed the exploitation of Plaintiff E.S. at Motel 6® and Studio 6® hotels which form the basis for this complaint.

i. Criminal charges were brought against a man who sex trafficked a fifteen (15) year old girl out of a Motel 6 in Beaumont, Texas in March 2016.[47]

ii. In approximately September 2011, sex traffickers set up an operation at a Motel 6 in Toledo, Ohio to sex traffic fifteen (15) and sixteen (16) year old girls.[48]

iii. From approximately 2012 through October 2014, two (2) men engaged in a criminal sex trafficking venture of children which operated in part out of a Motel 6 in Harvey, Illinois.[49]

iv. Police rescued an eighteen (18) year old girl from a sex trafficker in February 2012, at a Motel 6 in Portland, Oregon.[50]

v. The Central Ohio Human Trafficking Task Force completed an investigation which resulted in indictments in August 2012, of several persons charged with human trafficking which occurred at the Motel 6 on Dublin-Granville Road in Columbus, Ohio as well as other locations.[51]

vi. In October 2017, the County Attorney's Office for Harris County, Texas sued a local Motel 6 after law enforcement identified the property as a criminal hotspot that had been attracting drug activity, human trafficking, and violent crime for years. The suit

---

[47] https://kfdm.com/news/local/women-accuse-defendant-of
[48] https://www.toledoblade.com/Courts/2012/06/02/2-Toledoans-accused-of-juvenile-sex-trafficking-1.html
[49] https://www.justice.gov/usao-ndil/file/813771/download
[50] https://www.justice.gov/usao-or/pr/tacoma-pimp-sentenced-25-years-sex-trafficking-two-victims
[51] https://www.dispatch.com/content/stories/local/2012/08/03/secret-panel-on-human-trafficking-wins-indictments.html

alleged the Motel 6 knowingly tolerated and failed to make reasonable efforts to abate the criminal activities on its property.[52]

vii. The FBI investigated and arrested several individuals in December 2012, for human trafficking of several young women and a juvenile at a Motel 6 in Madison, Alabama.[53]

viii.     The Orange County Human Trafficking Task Force busted a criminal enterprise in December 2012 that was selling women for sex out of a Motel 6 in Anaheim, California.[54]

ix. Beginning in approximately May 2013, a fifteen (15) year old runaway was sex trafficked out of the Motel 6 on Caton Avenue in Baltimore, Maryland.[55]

x. The FBI busted a sex trafficking ring operating out of a Motel 6 in San Antonio, Texas in September 2013. [56]

xi. In July 2012, a Tripadvisor reviewer who stayed at the Studio 6 on Watson Rd in Arlington, Texas wrote, "The first night there was no key because the card machine was broken, the second night no internet. The third night there was loud parties until 3 a.m. on a Thursday night. I felt like I was in a hot bed of criminal activity and I was only there on weekdays. The staff was very nice and I feel sorry for them. I won't go back." [57]

---

[52] https://www.chron.com/neighborhood/spring/news/article/Harris-County-sues-Spring-area-motel-labeled-12293254.php
[53] https://whnt.com/2012/12/07/fbi-investigates-human-trafficking-at-madison-motel/
[54] https://abc13.com/archive/8909784/
[55] https://www.wbal.com/article/106578/2/man-faces-prison-time-for-sex-trafficking-baltimore-teen
[56] https://www.ksat.com/news/sex-trafficking-ring-busted-at-motel-6
[57] https://www.tripadvisor.com/Hotel_Review-g30183-d98395-Reviews-Studio_6_Arlington-Arlington_Texas.html)

xii. In July 2018, a contributor to Trip advisor stated, "Worst hotel ever. Hookers, bums, bugs, and rude staff. So if you like those things along with a broken back door. Maybe you and your loved ones will enjoy your time if that's your thing, syringes in the parking lot. I could not believe how bad this place is. Glad we had the pistol." [58]

56.    WYNDHAM HOTELS AND RESORTS, INC. ("WYNDHAM")
       LA QUINTA®

a. Defendant Wyndham controls, owns, supervises, or operates the La Quinta® hotels located at 4900 Bryant Irvin Rd, Fort Worth, TX 76132, 4001 Scots Legacy Drive in Arlington and 4700 North Freeway in Fort Worth, Texas.

b. Wyndham, as La Quinta Holdings, Inc., failed to implement and enforce any of their own policies and protect Plaintiff E.S. from being trafficked.

c. Founded in 1968, La Quinta Holdings, Inc. had more than fifty (50) years of experience in managing successful brands, and founded in 1981, Wyndham has more than thirty-eight (38) years of experience. From all of their La Quinta® properties, Defendant Wyndham receives an application fee, a lump sum payment, royalties, and other ongoing financial benefits as La Quinta Holdings, Inc. once did.

d. Defendant Wyndham, as La Quinta Holdings Inc., knew or should have known that the La Quinta® where Plaintiff E.S. was trafficked for commercial sex was an area known for a high incidence of crime and

---

[58] https://www.tripadvisor.com/ShowUserReviews-g30183-d98395-r594663439-Studio_6_Arlington-Arlington_Texas.html)

prone to sex trafficking activity on and around the hotel premises, including when Plaintiff E.S. was trafficked.

e.  Despite having knowledge of the extensive prostitution and sex trafficking that occurs at hotels and specifically their hotels, Defendant Wyndham, as La Quinta Holdings, Inc., has repeatedly failed to thwart these activities.

f.  Defendant Wyndham can exercise control over La Quinta® hotels by:

   i.  distributing information to assist employees in identifying human trafficking;

   ii.  providing a process for escalating human trafficking concerns within the organization;

   iii.  requiring all employees to attend training related to human trafficking;

   iv.  providing new hire orientation on human rights and corporate responsibility;

   v.  providing training and education to La Quinta® branded hotels through webinars, seminars, conferences, and online portals;

   vi.  developing and holding ongoing training sessions on human trafficking;

   vii.  conducting audits of training protocols; or

   viii.  providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

g.  Defendant Wyndham, as La Quinta Holdings, Inc., is in an agency

relationship with its La Quinta® hotels offering public lodging services. This agency relationship was created and is maintained through Defendant Wyndham's exercise of an ongoing and systemic right of control over La Quinta® hotels by Defendant Wyndham's operations, including the means and methods of how La Quinta® hotels conduct daily business including:

   i. hosting online bookings on Defendant Wyndham's domain;

   ii. requiring La Quinta® hotels to use Defendant Wyndham's customer rewards program;

   iii. setting parameters on employee wages;

   iv. making employment decisions;

   v. advertising for employment;

   vi. sharing profits;

   vii. standardized training methods for employees;

   viii. building and maintaining the facility in a manner specified by Hyatt;

   ix. standardized or strict rules of operation;

   x. regular inspection of the facility and operation by Hyatt;

   xi. fixing prices; or

   xii. other actions that deprive La Quinta® hotels of any independence in their business operations.

h. Apparent agency also exists between Defendant Wyndham, as La Quinta Holdings, Inc., and La Quinta® hotels. Defendant Wyndham holds out La Quinta® hotels to the public as their direct alter-ego each possessing

authority to act on the other's behalf.

i.  Given public statements on behalf of its brand and the control it assumed in educating, implementing, and directing its hotels, Defendant Wyndham, as La Quinta Holdings, Inc., breached its duties in the following ways:

    i.  Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

    ii.  Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

    iii.  Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

    iv.  Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

    v.  Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    vi.  Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; or

    vii.  Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

j.  For years, La Quinta Holdings, Inc., has demonstrated willful blindness to the rampant sex trafficking occurring throughout its La Quinta® brand

across the country. This entrenched apathy to the real risk of sex trafficking allowed the exploitation of Plaintiff E.S. at a La Quinta® that forms the basis for this complaint and the successor liability Defendant Wyndham now faces.

i.  In March 2015, a Sergeant 1st Class was investigated for trafficking a woman in his battalion out of a La Quinta® in Killeen, Texas.[59]

ii. In March 2017, three (3) men were arrested at a La Quinta® in Ventura, California for sexually trafficking a minor. [60]

iii. In November 2017, a man and a woman were arrested at a La Quinta® in Panama City, Florida for sex trafficking another woman out of the same hotel.[61]

iv. In December 2017, a man was arrested for trafficking a woman out of a La Quinta® in Panama City, Florida.[62]

v.  In May 2018, the manager of a La Quinta® in Tuscaloosa, Alabama was arrested for allowing human trafficking at the hotel. Police unveiled that the manager was financially profiting from sex traffickers that used her hotel.[63]

vi. In June 2018, a man was arrested for trafficking two (2) minor girls and holding them against their will at a La Quinta® in

---

[59] https://www.thedailybeast.com/inside-fort-hoods-prostitution-ring
[60] https://www.10news.com/news/3-men-arrested-accused-of-human-trafficking-forcing-teen-into-prostitution-in-san-diego
[61] https://www.newsherald.com/news/20171126/pcpd-pair-charged-with-human-trafficking-forced-prostitution
[62] https://www.wtvy.com/content/news/Dothan-man-accused-of-forcing-person-into-prostitution-in-Panama-City-467034463.html
[63] https://www.tuscaloosanews.com/news/20180517/tuscaloosa-police-charge-laquinta-inn-manager-with-human-trafficking

Norcross, Georgia.[64]

vii. In October 2018, a man was arrested after he coerced a deaf woman into a relationship with him only to sell her for sex at a La Quinta® in Austin, Texas.[65]

viii.     In November 2018, a man was arrested for trafficking a sixteen (16) year old girl for sex at a La Quinta® in Springdale, Ohio.[66]

ix. In December 2018, a number of Chinese women were being sexually trafficked by a married couple through a La Quinta® in South Burlington, Vermont. [67]

x. An April 2018 report showed hotels in the Hudson Valley that have high rates of sex trafficking and the La Quinta® in Westchester, New York had thirty-seven (37) trafficking calls in 24 months.[68]

xi. In April 2019, a man trafficked a minor through a La Quinta® in Sarasota, Florida.

k.  Defendant Wyndham also controls, owns, supervises, or operates the the Baymont Inn® hotel located at 2401 Diplomacy Drive in Arlington, the Super 8® hotels located at 1905 West Pleasant Ridge Road and at 2710

---

[64] https://www.ajc.com/news/local/gwinnett-man-charged-with-trafficking-children-for-sex-labor/hqGlERVvMI3q0uC4PEUO6O/

[65] https://www.kxan.com/news/local/austin/man-arrested-for-allegedly-forcing-a-deaf-woman-into-prostitution/1515032988

[66] https://www.wcpo.com/news/crime/man-found-guilty-of-trafficking-underage-girl-for-sex

[67] https://www.wcax.com/content/news/NH-couple-accused-of-enticing-Chinese-into-sex-trafficking-502787462.html

[68] http://westchester.news12.com/story/38003438/slavery-in-suburbia-sex-trafficking-of-children-flourishing-in-the-hudson-valley

East Abram Street in Arlington, the Microtel® hotel located at 1901
Pendleton Drive in Garland, the Wingate® hotel located at 8650 North
Stemmons Freeway in Dallas, the Days Inn® hotel located at 1901 West
Pleasant Ridge Road in Arlington, and the Howard Johnson® hotel located
at 2001 East Copeland Road in Arlington, Texas.

l.  Wyndham failed to implement and enforce any of their own policies and
protect Plaintiff E.S. from being trafficked.

m.  Founded in 1981, Wyndham represents that they have more than thirty-
seven years of experience in managing successful brands. From all of their
Baymont Inn®, Super 8®, Microtel®, Wingate Hotel®, Days Inn®, and
Howard Johnson® hotels, Defendant Wyndham receives an application fee,
a lump sum payment, royalties, and other ongoing financial benefits.

n.  Defendant Wyndham knew or should have known that the Baymont Inn®,
Super 8®, Microtel®, Wingate Hotel®, Days Inn®, and Howard Johnson®
hotels where Plaintiff E.S. was trafficked for commercial sex were in areas
known for a high incidence of crime and prone to sex trafficking activity
on and around the hotel premises, including when Plaintiff E.S. was
trafficked.

o.  Despite having knowledge of the extensive prostitution and sex trafficking
that occurs at hotels and specifically their hotels, Defendant Wyndham has
repeatedly failed to thwart these activities.

p.  Defendant Wyndham can exercise control over Baymont Inn®, Super 8®,
Microtel®, Wingate Hotel®, Days Inn®, and Howard Johnson® hotels by:

    i.  distributing information to assist employees in identifying human trafficking;

    ii.  providing a process for escalating human trafficking concerns within the organization;

    iii. requiring all employees to attend training related to human trafficking;

    iv. providing new hire orientation on human rights and corporate responsibility;

    v.  providing training and education to Baymont Inn®, Super 8®, Microtel®, Wingate Hotel®, Days Inn®, and Howard Johnson® hotels through webinars, seminars, conferences, and online portals;

    vi. developing and holding ongoing training sessions on human trafficking;

    vii. conducting audits of training protocols; or

    viii.     providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

q.  Defendant Wyndham is in an apparent and/or actual agency relationship with its Baymont Inn®, Super 8®, Microtel®, Wingate Hotel®, Days Inn®, and Howard Johnson® hotels offering public lodging services. This agency relationship was created and is maintained through Defendant Wyndham's exercise of an ongoing and systemic right of control over Baymont Inn®,

Super 8®, Microtel®, Wingate Hotel®, Days Inn®, and Howard Johnson® hotels by Defendant Wyndham's operations, including the means and methods of how Baymont Inn®, Super 8®, Microtel®, Wingate Hotel®, Days Inn®, and Howard Johnson® hotels conduct daily business including:

    i.   hosting online bookings on Defendant Wyndham's domain;

    ii.  requiring Baymont Inn®, Super 8®, Microtel®, Wingate Hotel®, Days Inn®, and Howard Johnson® hotels to use Defendant Wyndham's customer rewards program;

    iii. setting parameters on employee wages;

    iv. making employment decisions;

    v.  advertising for employment;

    vi. sharing profits;

    vii. standardized training methods for employees;

    viii.    building and maintaining the facility in a manner specified by Wyndham,

    ix. standardized or strict rules of operation;

    x.  regular inspection of the facility and operation by Wyndham;

    xi. fixing prices; or

    xii. other actions that deprive Baymont Inn®, Super 8®, Microtel®, Wingate Hotel®, Days Inn®, and Howard Johnson® hotels of any independence in their business operations.

r.  Apparent agency also exists between Defendant Wyndham and Baymont Inn®, Super 8®, Microtel®, Wingate Hotel®, Days Inn®, and Howard

Johnson® hotels. Defendant Wyndham holds out Baymont Inn®, Super 8®, Microtel®, Wingate Hotel®, Days Inn®, and Howard Johnson® hotels to the public as their direct alter-ego each possessing authority to act on the other's behalf.

s.  Given Defendant Wyndham's public statements on behalf of its brand and the control it assumed in educating, implementing, and directing its hotels, Defendant Wyndham breached its duties in the following ways:

   i.   Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

   ii.  Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

   iii. Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

   iv.  Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

   v.   Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

   vi.  Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; or

   vii. Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or

tracking performance indicators and key metrics on human trafficking prevention.

    t.   For years, Defendant Wyndham has demonstrated willful blindness to the rampant sex trafficking occurring throughout its Baymont Inn®, Super 8®, Microtel®, Wingate Hotel®, Days Inn®, and Howard Johnson® hotels across the country. This entrenched apathy to the real risk of sex trafficking allowed the exploitation of Plaintiff E.S. at Baymont Inn®, Super 8®, Microtel®, Wingate Hotel®, Days Inn®, and Howard Johnson® hotels that forms the basis for this complaint.

57.    BAYMONT INN®

    a.   In August of 2017, a reviewer described the Baymont Inn® by Wyndham in Meridian, Mississippi as follows: "There were obvious permanent residents in the back, of which one offered one of our people crack and were talking about having prostitutes over smoking crack and weed to cover up the smell of crack." [69]

    b.   In November of 2018, the owner of the Baymont Inn® in Manchester, Connecticut was arrested for sex trafficking minors. [70]

    c.   In October of 2015, a reviewer described the Baymont Inn® in Houston, Texas as follows: "Hookers, hookers and more hookers! Don't forget the drug activity too! Stayed here one night as I had an early flight out of

---

[69] https://www.tripadvisor.com/ShowUserReviews-g43893-d235304-r511959496
Baymont_by_Wyndham_Meridian-Meridian_Mississippi.html
[70] https://patch.com/connecticut/vernon/vernon-office-raided-hotel-owner-charged-prostitution-case

Hobby the next morning! Big mistake! As I was checking in, some pimp named Big D tried to get my wife to join his brigade!" [71]

d. In October of 2016, a reviewer described the Baymont Inn® in Orlando, Florida as follows: "To begin my terrible experience at this hotel, I was greeted by a real life prostitute waiting to pick up some business on the sidewalk directly in front of the hotel! After we pulled in to park we see her PIMP hiding behind some UHAUL truck who kept poking his head out while we unpacked our things from the car." [72]

e. In December of 2015, a man and a woman were arrested at a Baymont Inn® in Murfreesboro, Tennessee for sex trafficking. [73]

58.    SUPER 8®

a. In August 2012, the Central Ohio Human Trafficking Task Force completed an investigation which resulted in indictments of several persons charged with human trafficking which occurred at the Super 8® on Dublin-Granville Road in Columbus, Ohio as well as other locations.[74]

b. In September 2013, a trafficker took a 17- year old girl to a Super 8® in West Greenwich, Rhode Island and ultimately pled guilty to federal sex trafficking charges for his criminal conduct.[75]

---

[71] https://www.yelp.com/biz/baymont-inn-houston-houston
[72] https://www.tripadvisor.com/Hotel_Review-g34515-d217364-Reviews-Baymont_by_Wyndham_Florida_Mall-Orlando_Florida.html#REVIEWS
[73] https://www.wgnsradio.com/prostitute-and-alleged-pimp-arrested-in-murfreesboro-cms-30412&cache_id=5150
[74] John Futty, *Secret panel on human trafficking wins indictments*. THE COLUMBUS DISPATCH (Aug. 3, 2012, 8:56 AM), https://www.dispatch.com/content/stories/local/2012/08/03/secret-panel-on-human-trafficking-wins-indictments.html
[75] Michael P. McKinney, *Missouri man pleads guilty to sex trafficking for bringing 17-year-old Massachusetts girl to Rhode Island*, PROVIDENCE JOURNAL (Feb 27, 2014, 12:01 AM), https://www.providencejournal.com/breaking-news/content/20140227-missouri-man-pleads-guilty-to-sex-trafficking-for-bringing-17-year-old-massachusetts-girl-to-rhode-island.ece

c.  In June 2014, federal authorities charged a man with human trafficking after arresting him at a Super 8® in Wyoming, Michigan where he had taken a 15-year old girl.[76]

d.  In July 2016, an undercover federal agent discovered 2 girls ages 18 and 15 at a Super 8® in El Paso, Texas and charged their trafficker with 2 counts of sex trafficking children by force.[77]

e.  In October 2016, 2 men were arrested at a Super 8® in Frederick, Maryland and were charged with human trafficking-related offenses in relation to their crimes against a juvenile victim.[78]

f.  From February 2016 through October 2017, a sex trafficking ring operated out of a Super 8® in Fort Worth, Texas and trafficked at least five (5) juveniles.[79]

g.  In June 2017, authorities busted a sex trafficking operation at a Super 8® in Lakeland, Tennessee, and rescued a 19-year old girl who was being held against her will and sold for sex.[80]

h.  In July 2018, an investigation on the premises of a Super 8® in Columbus, Georgia led to human trafficking charges against multiple suspects.[81]

---

[76] Barton Deiters, *Man accused of human trafficking of 15-year-old girl in Wyoming*, MLIVE (Jun. 24, 2014), https://www.mlive.com/news/grand-rapids/index.ssf/2014/06/man_accused_of_human_trafficki.html
[77] Aaron Martinez, *Man pleads guilty in underage sex trafficking case*, EL PASO TIMES (Apr 21, 2017), https://www.elpasotimes.com/story/news/2017/04/21/man-pleads-guilty-sex-trafficking-case/100754896/
[78] *Two charged in Maryland with Rape, Human Trafficking, Others*, NBC WASHINGTON (Oct. 1, 2016, 7:20 AM), https://www.nbcwashington.com/news/local/Two-Charged-in-Maryland-with-Rape-Human-Trafficking-Others-395505801.html
[79] Domingo Ramirez Jr., *Statewide sex-trafficking ring operating in Fort Worth shut down with eight arrests*, FORT WORTH STAR-TELEGRAM (Oct. 17, 2017, 2:36 PM), https://www.star-telegram.com/news/local/community/fort-worth/article179323426.html
[80] *Sex trafficking operation busted at Super 8 in Lakeland*, WMC ACTION NEWS 5 (Jun 13, 2017, 9:41 PM), http://www.wmcactionnews5.com/story/35657458/sex-trafficking-operation-busted-at-super-8-in-lakeland/
[81] Ben Wright, *Threesome and drugs: Escorting app leads to human trafficking charges, Columbus police say*, LEDGER-ENQUIRER (Jul. 12, 2018, 12:00 AM), https://www.ledger-enquirer.com/latest-news/article214760585.html

      i.   In August 2018, a 16-year old victim of human trafficking was rescued from a Super 8® in Duson, Louisiana.[82]

      j.   In September 2018, a former member of the Oklahoma state legislature was sentenced to 15 years in prison on charges of child sex trafficking after he was found in a room at a Super 8®, with a 17-year old boy.[83]

59.     MICTROTEL ®

      a.   In October 2017, a 16-year-old girl was rescued from a Microtel® in Raleigh, North Carolina where she was being held by a man who was prostituting her from the location. The man was a known sex trafficker.[84]

      b.   In June of 2013, a man was charged with trafficking an eighteen year old girl at a Microtel® in Raleigh, North Carolina. [85]

60.     DAYS INN®

      a.   In February 2019, a man ran a human trafficking operation out of a Days Inn® in Madison Heights, Michigan.[86]

      b.   In August 2018, four people were arrested for trafficking a 15-year old girl out of a Days Inn® in Marietta, Georgia. They kept the young girl in captivity by threatening to kill her if she tried to escape.[87]

      c.   In October 2015, a man prostituted women out of a Days Inn® in Reading, Pennsylvania. He controlled the women with drugs and set up sexual encounters.[88]

---

[82] Lester Duhe, *Authorities investigate human trafficking case involving 16 year old boy*, KLFY (Aug. 13, 2018, 6:48 PM), https://www.klfy.com/news/local/authorities-investigate-human-trafficking-case-involving-16-year-old-boy/1360573674

[83] *Former Oklahoma state senator sentenced to 15 years on child sex trafficking charge*, NBC (Sept. 17, 2018, 11:24 PM), https://www.nbcnews.com/news/us-news/former-oklahoma-state-senator-sentenced-15-years-child-sex-trafficking-n910516

[84] https://www.newsobserver.com/news/local/crime/article178431461.html

[85] https://www.witn.com/home/headlines/Man-Charged-With-Human-Trafficking-In-Pitt-County-213318591.html

[86] http://www.fox2detroit.com/news/local-news/man-arrested-for-sex-trafficking-out-of-madison-heights-days-inn https://www.mdjonline.com/news/marietta-sex-trafficking-ring-thwarted-police-say/article_997739c0-a55b-11e8-9647-338800611347.html

d.   In September 2018, a woman was caught sex trafficking two 17-year old girls at a Days Inn® in Fayetteville, North Carolina.[88]

e.   In July 2018, a man used social media websites to coerce a young girl to come to a Days Inn® Gulfport, Mississippi. When she arrived, the man forced her into sexual servitude.[90]

f.   In December 2018, a couple coerced females from China to move to Maine by offering tourist visas. Upon arrival, the couple stripped the women and girls of their identification, advertised them as prostitutes on Craigslist, and forced them to sexually service men at two Days Inn® locations, one in Kittery and the other in Dover, New Hampshire.[91]

g.   In June 2018, three individuals were arrested in a human trafficking scheme at a Days Inn® in Virginia Beach, Virginia.[92]

61.     WINGATE®

a.    In April 2015, a reviewer commented about the Dallas Wingate® Hotel as follows, "Beware! This hotel has prostitutes & pimps everywhere and there is a strip club right across the street. Rough looking individuals outside in the parking lot and in the hallways. This was the scariest hotel experience I have ever had. Desk staff lady was not helpful at all…Security had to check if our room was being used before we could go up." [93]

---

[88] https://www.poconorecord.com/news/20161204/scranton-sex-trafficking-cases-move-forward
[89] https://www.fayobserver.com/news/20180921/fayetteville-woman-charged-in-human-trafficking-operation.
[90] https://www.sunherald.com/news/local/crime/article215055145.html
[91] https://www.seacoastonline.com/news/20181214/husband-wife-charged-in-sex-trafficking-prostitution-scheme
[92] https://www.wavy.com/news/local-news/virginia-beach/three-sex-trafficking-suspects-arrested-by-virginia-beach-police/1213339402
[93] https://www.tripadvisor.com/ShowUserReviews-g55711-d109391-r267425338-

62.     HOWARD JOHNSON®

    a.   In October of 2017, the manager of a Howard Johnson® in Bartonville, Pennsylvania, was arrested for allowing and profiting from drug and sex trafficking within the hotel. [94]

    b.   In August 2017, a women, already under indictment for running a series of brothels throughout Boston, was arrested for trafficking women out of Howard Johnson® hotels in Quincy, Massachusetts. [95]

    c.   In February of 2013, the  city attorney ordered a Howard Johnson® in San Diego, California to make immediate changes in security to crack down on sex trafficking. Over the course of the investigation lasting from 2011 to 2013, more than 20 arrests were made, including arrests for pimping and human trafficking.[96]

63.     MARRIOTT INTERNATIONAL, INC. "MARRIOTT"

    a.   Marriott owns, supervises, and/or operates the Fairfield Inn® hotels located at 2500 East Lamar Boulevard in Arlington and at 2110 Market Center Boulevard and North Stemmons Freeway in Dallas, Texas.

    b.   Marriott failed to implement and enforce any of their own policies and protect Plaintiff E.S. from being trafficked.

    c.   Founded in 1927, Marriott represents that they have more than Ninety-two (92) years of experience in managing successful brands. From all of their Fairfield Inn® properties, Defendant Marriott receives an application fee, a

---

Wingate_by_Wyndham_Dallas_Love_Field-Dallas_Texas.html)

[94] https://www.pahomepage.com/news/bartonsville-hotel-operator-charged-with-human-drug-trafficking/

[95] https://www.patriotledger.com/news/20170808/alleged-quincy-brothel-owner-arrested-again-for-sex-trafficking

[96] https://www.nbcsandiego.com/news/local/Mission-Valley-Travelodge-Hotel-Prostitution-Crackdown-243554781.html

lump sum payment, royalties, and other ongoing financial benefits.

d.  Defendant Marriott knew or should have known that the Fairfield Inn and Suites® where Plaintiff E.S. was trafficked for commercial sex was an area known for a high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff E.S. was trafficked.

e.  Despite having knowledge of the extensive prostitution and sex trafficking that occurs at hotels and specifically their hotels, Defendant Marriott has repeatedly failed to thwart these activities.

f.   Defendant Marriott can exercise control over Fairfield Inn® hotels by:

i.   distributing information to assist employees in identifying human trafficking;

ii.  providing a process for escalating human trafficking concerns within the organization;

iii. requiring all employees to attend training related to human trafficking;

iv.  providing new hire orientation on human rights and corporate responsibility;

v.   providing training and education to Fairfield Inn and Suites® hotels through webinars, seminars, conferences, and online portals;

vi.  developing and holding ongoing training sessions on human trafficking;

vii. conducting audits of training protocols; or

viii.   providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

g.   Defendant Marriott is in an apparent and/or actual agency relationship with its Fairfield Inn® hotels offering public lodging services. This agency relationship was created and is maintained through Defendant Marriott's exercise of an ongoing and systemic right of control over Fairfield Inn and Suites® hotels by Defendant Marriott's operations, including the means and methods of how Fairfield Inn and Suites® hotels conduct daily business including:

i.   hosting online bookings on Defendant Marriott's domain;

ii.   requiring Hyatt Place® hotels to use Defendant Marriott's customer rewards program;

iii.   setting parameters on employee wages;

iv.   making employment decisions;

v.   advertising for employment;

vi.   sharing profits;

vii.   standardized training methods for employees;

viii.   building and maintaining the facility in a manner specified by Marriott;

ix.   standardized or strict rules of operation;

x.   regular inspection of the facility and operation by Marriott;

xi.   fixing prices; or

50

xii. other actions that deprive Fairfield Inn and Suites® hotels of any independence in their business operations.

h. Apparent agency also exists between Defendant Marriott and Fairfield Inn and Suites® hotels. Defendant Marriott holds out Fairfield Inn and Suites® hotels to the public as their direct alter-ego each possessing authority to act on the other's behalf.

i. Given Defendant Marriott's public statements on behalf of its brand and the control it assumed in educating, implementing, and directing its hotels, Defendant Marriott breached its duties in the following ways:

i. Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

ii. Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

iii. Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

iv. Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

v. Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

vi. Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; or

      vii. Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

j.    For years, Defendant Marriott has demonstrated willful blindness to the rampant sex trafficking occurring throughout its Fairfield Inn® hotels across the country. This entrenched apathy to the real risk of sex trafficking allowed the exploitation of Plaintiff E.S. at a Fairfield Inn® that forms the basis for this complaint.

      i.   In February 2017, a woman was sentenced to one count of conspiracy to commit sex trafficking after kidnapping a 17-year-old girl from Topeka, Kansas to Junction City, Kansas in March of 2015 for the purpose of sex trafficking her out of a Fairfield Inn® in Manhattan, Kansas. [97]

      ii.  In October 2013, a man was sentenced to five to seven years in state prison for kidnapping two underage girls and forcibly trafficking them in hotel rooms throughout Quincy, Dedham, Dorchester, and Danvers Massachusetts, including a Fairfield Inn® in Dedham. [98]

      iii.  In December 2019, an Arkansas man was arrested at a Fairfield Inn® in Springdale, Arkansas after trafficking a woman across Arkansas, Louisiana, and Texas for the purpose of commercial

---

[97] http://www.kake.com/story/34426420/woman-sentenced-in-teen-sex-trafficking-case
[98] https://www.wickedlocal.com/x919096222/Dorchester-man-arrested-in-Quincy-pleads-guilty-to-child-prostitution-charges

sex. [99]

    iv.  In November 2015, a reviewer described the Fairfield Inn® in Washington D.C. as follows, "The clientele was seedy. When my family and I left for dinner and returned I felt like we walked back into a Brothel. It appeared that a pimp was dropping off one of his hookers who was meeting a john. I was done. Between the seedy guests roaming around in this hotel and the other activity going on we all felt grossed out. Whew!!!! Just simply waking from the lobby to my room we felt like we were in a danger zone." The reviewer goes onto say, "We also went with the Fairfield because it had the Marriott name behind it." [100]

    v.  In July of 2018, a pimp named Lamont King was arrested by an undercover officer. The officer was investigating related sex trafficking activity in the area, including the Fairfield Inn® on West 86th Street. [101]

64.      EXTENDED STAY AMERICA, INC.

    a.  Extended Stay America, Inc. owns, supervises, and/or operates the Extended Stay America® located at 1221 North Watson Road in Arlington, Texas.

    b.  Extended Stay America, Inc. failed to implement and enforce any of their own policies and protect Plaintiff E.S. from being trafficked.

---

[99] https://www.arkansasonline.com/news/2019/dec/04/north-little-rock-man-arrested-connection-sex-traf/
[100] https://www.tripadvisor.com/Hotel_Review-g28970-d939375-Reviews-or5-Fairfield_Inn_Suites_Washington_DC_New_York_Avenue-Washington_DC_District_of_Columb.html#REVIEWS
[101] https://www.theindychannel.com/longform/running-blind-impd-arrests-first-suspected-pimp-in-7-months

c.  Founded in 1995, Extended Stay America, Inc. represents that they have more than twenty-three (23) years of experience in managing successful brands. From all of their Extended Stay America® properties, Defendant Extended Stay America, Inc. receives an application fee, a lump sum payment, royalties, and other ongoing financial benefits.

d.  Defendant Extended Stay America, Inc. knew or should have known that the Extended Stay America® where Plaintiff E.S. was trafficked for commercial sex was an area known for a high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff E.S. was trafficked.

e.  Despite having knowledge of the extensive prostitution and sex trafficking that occurs at hotels and specifically their hotels, Defendant Extended Stay America, Inc. has repeatedly failed to thwart these activities.

f.  Defendant Extended Stay America, Inc. can exercise control over Extended Stay America® hotels by:

  i.  distributing information to assist employees in identifying human trafficking;

  ii.  providing a process for escalating human trafficking concerns within the organization;

  iii.  requiring all employees to attend training related to human trafficking;

  iv.  providing new hire orientation on human rights and corporate

responsibility;

    v.   providing training and education to Extended Stay America® hotels through webinars, seminars, conferences, and online portals;

   vi.   developing and holding ongoing training sessions on human trafficking;

  vii.   conducting audits of training protocols; or

 viii.   providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

g.  Defendant Extended Stay America, Inc. is in an agency relationship with its Extended Stay America® hotels offering public lodging services. This agency relationship was created and is maintained through Defendant Extended Stay America, Inc.'s exercise of an ongoing and systemic right of control over Extended Stay America® hotels by Defendant Extended Stay America, Inc.'s operations, including the means and methods of how Extended Stay America® hotels conduct daily business including:

    i.   hosting online bookings on Defendant Extended Stay America, Inc.'s domain;

   ii.   requiring Extended Stay America, Inc. hotels to use Defendant Extended Stay America, Inc.'s customer rewards program;

  iii.   setting parameters on employee wages;

  iv.   making employment decisions;

  v. advertising for employment;

  vi. sharing profits;

  vii. standardized training methods for employees;

  viii. building and maintaining the facility in a manner specified by Extended Stay America, Inc.;

  ix. standardized or strict rules of operation;

  x. regular inspection of the facility and operation by Extended Stay America, Inc.;

  xi. fixing prices; or

  xii. other actions that deprive Extended Stay America® hotels of any independence in their business operations.

h. Apparent agency also exists between Defendant Extended Stay America, Inc. and Extended Stay America® hotels. Defendant Extended Stay America, Inc. holds out Extended Stay America® hotels to the public as their direct alter-ego each possessing authority to act on the other's behalf.

i. Given Defendant Extended Stay America, Inc.'s public statements on behalf of its brand and the control it assumed in educating, implementing, and directing its hotels, Defendant Extended Stay America, Inc. breached its duties in the following ways:

  i. did not adequately distribute information to employees on identifying human trafficking;

  ii. failed to provide a process for escalating human trafficking

concerns within the organization;

    iii.   failed to mandate all managers, employees, or owners attend training on identifying human trafficking;

    iv.   failed to provide new hire orientation on human rights and corporate responsibility;

    v.   failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    vi.   failed to develop, hold, and require ongoing training sessions on human trafficking; or

    vii.   failed to provide checklists, escalation protocols and information to property management staff, or tracking performance indicators and key metrics on human trafficking prevention.

j.   For years, Defendant Extended Stay America, Inc. has demonstrated willful blindness to the rampant sex trafficking occurring throughout its Extended Stay America® brand across the country. This entrenched apathy to the real risk of sex trafficking allowed the exploitation of Plaintiff E.S. at an Extended Stay America® that forms the basis for this complaint.

    i.   In February of 2019, fourteen men were arrested for human trafficking at an Extended Stay America in Waukegan, Illinois. This was part of a two and a half week long police initiative to crackdown on human trafficking within the area.[102]

    ii.   In January of 2017, two men were arrested at an Extended Stay

---

[102] https://patch.com/illinois/deerfield/prostitution-sting-operation-hooks-14-lake-county

America in Woodbury, WI for trafficking a 31 year-old homeless woman.[103]

    iii.   In October of 2017, a Pikesville man was sentenced to four years in prison after trafficking a woman out of an Extended Stay America in Columbia, Maryland.[104]

65.    CHOICE HOTELS INTERNATIONAL, INC. ("CHOICE HOTELS")

    a.   Choice Hotels owns, supervises, and/or operates the Quality Inn® hotels located at 121 East Interstate 20 in Arlington, 3891 S Great Southwest Parkway in Grand Prairie, 923 Windbell Circle in Mesquite,  4555 Belt Line Road in Addison, and 10835 Composite Drive in Dallas, Texas.

    b.   Choice Hotels failed to implement and enforce any of their own policies and protect Plaintiff E.S. from being trafficked.

    c.   Founded in 1937, Choice was the joint-venture of seven (7) independent hotel owners specifically looking to join forces to share trade knowledge and better determine best practices. Choice represents that they have more than eighty-two (82) years of experience in managing successful brands. From all of their hotels, Defendant Choice receives an application fee, a lump sum payment, royalties, and other ongoing financial benefits.

    d.   Defendant Choice Hotels knew or should have known that the Quality Inn® where Plaintiff E.S. was trafficked for commercial sex was an area known for a high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff E.S. was

---

[103] https://www.twincities.com/2017/01/12/2-hudson-wis-men-arrested-in-sex-trafficking-scheme-at-woodbury-hotel/
[104] https://foxbaltimore.com/news/local/pikesville-man-gets-4-years-in-jail-for-human-trafficking-at-columbia-hotel

trafficked.

e.  Despite having knowledge of the extensive prostitution and sex trafficking that occurs at hotels and specifically their hotels, Defendant Choice Hotels has repeatedly failed to thwart these activities.

f.  Defendant Choice Hotels can exercise control over Quality Inn® hotels by:

    i.  distributing information to assist employees in identifying human trafficking;

    ii.  providing a process for escalating human trafficking concerns within the organization;

    iii.  requiring all employees to attend training related to human trafficking;

    iv.  providing new hire orientation on human rights and corporate responsibility;

    v.  providing training and education to Quality Inn® hotels through webinars, seminars, conferences, and online portals;

    vi.  developing and holding ongoing training sessions on human trafficking;

    vii.  conducting audits of training protocols; or

    viii.  providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

g.  Defendant Choice Hotels is in an agency relationship with its Quality Inn® hotels offering public lodging services. This agency relationship was

created and is maintained through Defendant Choice Hotel's exercise of an ongoing and systemic right of control over Quality Inn® hotels by Defendant Choice Hotel's operations, including the means and methods of how Quality Inn® hotels conduct daily business including:

    i.   hosting online bookings on Defendant Choice Hotel's domain;

    ii.   requiring Quality Inn® hotels to use Defendant Choice Hotel's customer rewards program;

    iii.   setting parameters on employee wages;

    iv.   making employment decisions;

    v.   advertising for employment;

    vi.   sharing profits;

    vii.   standardized training methods for employees;

    viii.   building and maintaining the facility in a manner specified by Choice Hotels;

    ix.   standardized or strict rules of operation;

    x.   regular inspection of the facility and operation by Choice Hotels;

    xi.   fixing prices; or

    xii.   other actions that deprive Quality Inn® hotels of any independence in their business operations.

h.   Apparent agency also exists between Defendant Choice Hotels and Quality Inn® hotels. Defendant Choice Hotels holds out Quality Inn® hotels to the public as their direct alter-ego each possessing authority to act on the other's behalf.

60

i.  Given Defendant Choice Hotel's public statements on behalf of its brand and the control it assumed in educating, implementing, and directing its hotels, Defendant Choice Hotels breached its duties in the following ways:

   i.  Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

   ii.  Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

   iii.  Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

   iv.  Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

   v.  Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

   vi.  Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; or

   vii.  Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

j.  For years, Defendant Choice Hotels has demonstrated willful blindness to the rampant sex trafficking occurring throughout its Quality Inn® brand

across the country. This entrenched apathy to the real risk of sex trafficking allowed the exploitation of Plaintiff E.S. at a Quality Inn® that forms the basis for this complaint.

i. In January of 2019, two women were rescued from the Quality Inn® hotel in Battle Creek, Michigan. The men who trafficked these women used drugs and physical violence forcing the women to prostitute themselves. [105]

ii. In May of 2017, women were trafficked out of a Quality Inn® in Jacksonville, Florida.[106]

iii. In July of 2013, a man and a woman recruited and harbored a 16-year-old girl for the purposes of trafficking her for commercial sex out of a Quality Inn® in Columbia, South Carolina.[107]

iv. In January of 2015, a man was arrested for trafficking of a fifteen year-old girl out of a Quality Inn in Miami, Florida. [108]

v. In January of 2017, a man was convicted for human trafficking a woman out of a Quality Inn® hotel. [109]

vi. In February of 2015, a seventeen year old girl was being held, drugged and sexually exploited out of a Quality Inn® in Raynham,

---

[105] https://www.battlecreekenquirer.com/story/news/2019/01/14/lansing-battle-creek-human-trafficking-quality-inn/2570625002/
[106] https://www.jacksonville.com/news/public-safety/2017-05-31/jacksonville-man-43-arrested-human-trafficking-charges
[107] https://www.wistv.com/story/22961765/two-in-columbia-netted-in-nationwide-child-sex-trafficking-bust/
[108] https://www.nbcmiami.com/news/local/alleged-pimp-for-runaway-teen-facing-sex-trafficking-charge-miami-dade-police/114104/
[109] https://www.dothaneagle.com/news/crime_court/website-hotel-assailant-all-being-sued-as-a-result-of/article_eef1d91c-e3fd-11e6-a872-1bdefa8794b3.html

Massachusetts. [110]

### D.     THE SEX TRAFFICKING OF E.S.

66.     The facts alleged herein stem from a sex trafficking ring operating Dallas/Fort Worth, Texas.   While victimized by her traffickers, E.S. was subject to rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and false imprisonment at the Defendants' hotels.

67.     In 2004, E.S. was 21 years-old when she was coerced into a partnership with a man who would become her trafficker. He convinced her to move in with him under the guise that he would help her save money to start her own hair salon and eventually help buy her a house. This financial security was appealing to E.S. and in 2006 she decided to move in with him.

68.     After the move, the man changed his behavior and became possessive over E.S. He stopped letting her leave the house and eventually turned the doorknob to her room inside out to lock her in. She was only allowed to leave the room to shower, eat and go on supervised outcalls for her trafficker. Her trafficker kept her complicit throughout her imprisonment in this room by drugging her with ecstasy and painkillers. E.S. stated that she believes her trafficker only stopped locking her in the room because he was, "Trying to break her," and once the desired result was achieved she was allowed to leave the room.

69.     At first, E.S.'s trafficker controlled all of the calls for clients. He placed advertisements on the Internet, specifically backpage.com and in local magazines and newspapers. He would rarely allow E.S. to keep any of the money she earned, and completely disregarded the promises of financial security for her and her daughter he made her prior to her trafficking.

---

[110] https://raynham.wickedlocal.com/article/20150212/NEWS/150218308

70.     Her trafficker controlled a ring of girls, whom he trafficked in hotels throughout the Dallas/Fort Worth between approximately 2006 and 2011. When checking into the hotels, E.S. would use both a fake ID and a federal ID. The reservations varied from being in her name, his name or one of the other girls being trafficked. They would pay for the rooms in cash or with a pre-paid card. While staying in the rooms they would often call for extra towels, refuse service, and leave trashcans full of condoms, baby wipes, and empty bottles of lube. E.S. also remembers hearing screaming from down the hall, while other girls were being beaten by men in the trafficking ring. Additionally, there was significant foot traffic within the hotels that her trafficker frequented.

71.     E.S. was forced to service between 8-10 men a day. Her trafficker did not provide a specific quota, but if she did not come home with a sizable profit her trafficker would intimidate and threaten her, causing E.S. significant fear and emotional turmoil.

72.     Oftentimes, while staying in the defendant's rooms, housekeeping would knock, but they would refuse service. However, they often called the front desk for extra towels, which were left outside the room.

73.     While staying at the Best Western at 201 Western Loop 820 North in Fort Worth, Texas, E.S. was removed from the premises because the hotel staff saw her backpage.com advertisement. E.S. and those involved in the trafficking ring were not allowed back to this Best Western. However, despite the circumstances being identified they were afterwards permitted at other Best Western hotels.

74.     Prior to, during, and following the incidents described herein, the Defendants had actual and/or constructive notice of drug dealing, prostitution, and/or general safety concerns at their hotels, including, but not limited to, video surveillance of their hotels, as

well as oral or written complaints regarding said suspicious activity. The Defendants failed to take any actions to curtail these activities.

75.      Had the Defendants been paying attention to the activities being conducted at their hotels and on their properties, and the apparent red flags outlined above, it would have been impossible for them not to notice the victimization of E.S.

### E.  THE DEFENDANTS FACILITATED THE TRAFFICKING OF E.S.

76.      Extended Stay America, G6 Hospitality, Marriott International, Best Western, Wyndham Hotels and Resorts and Choice Hotels profited from the sex trafficking of E.S. and knowingly or negligently aided and engaged with her trafficker in his sex trafficking venture. The Defendants leased rooms to E.S.'s traffickers, when they knew, or should have known, that he was using their rooms to imprison E.S., physically assault her, and subject her to repeated exploitation as he forced her into sexual servitude.

77.      Extended Stay America, G6 Hospitality, Marriott International, Best Western, Wyndham Hotels and Resorts and Choice Hotels knew, or should have known, that E.S. was being trafficked and that the Defendants were knowingly benefiting financially from said exploitation, because E.S.'s trafficker frequented the Defendants' hotels.

78.      Extended Stay America, G6 Hospitality, Marriott International, Best Western, Wyndham Hotels and Resorts and Choice Hotels knew, or should have known, that E.S. was being trafficked because E.S. constantly entertained traffic to appease her traffickers' expectations, when checking into the hotels, E.S. would use both a fake ID and a federal ID. The reservations varied from being in her name, her traffickers name or one of the other girls being trafficked. They would pay for the rooms with cash or a prepaid card; behavior that indicated they were using the Defendants' hotels for his illegal sex trafficking

venture.

79.     Extended Stay America, G6 Hospitality, Marriott International, Best Western, Wyndham Hotels and Resorts and Choice Hotels actively participated in this illegal endeavor by knowingly or negligently providing lodging to E.S.'s trafficker in which to harbor E.S. while he was trafficking her.

80.     Defendants Extended Stay America, G6 Hospitality, Marriott International, Best Western, Wyndham Hotels and Resorts and Choice Hotels profited from the sex trafficking of E.S. and knowingly or negligently aided and participated with E.S.'s trafficker in his criminal venture.

81.     Defendants Extended Stay America, G6 Hospitality, Marriott International, Best Western, Wyndham Hotels and Resorts Inc. and Choice Hotels actively participated in this illegal endeavor by knowingly or negligently providing lodging to those who purchased sex from E.S. in which to harbor E.S. while she was being trafficked.

82.     The Defendants all had the opportunity to stop E.S.'s trafficker and offenders like him from victimizing E.S. and others like her.  Instead, every Defendant failed to take reasonable measures to stop sex trafficking from occurring in their hotels.

83.     The Defendants all financially benefited from the sex trafficking of E.S., and other victims like her, and developed and maintained business models that attract and foster the commercial sex market for traffickers and buyers alike.

84.     Extended Stay America, G6 Hospitality, Marriott International, Best Western, Wyndham Hotels and Resorts and Choice Hotels enjoy the steady stream of income that sex traffickers bring to their budget level hotel brands.

85.     Extended Stay America, G6 Hospitality, Marriott International, Best Western,

Wyndham Hotels and Resorts and Choice Hotels financially benefit from their ongoing reputation for privacy, discretion, and the facilitation of commercial sex.

86.      The Defendants failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on their properties.

87.      The Defendants maintained their deficiencies to maximize profits by:

    a.  Reducing the cost of training employees and managers of how to spot the signs of human trafficking and sexual exploitation and what steps to take;

    b.  Not refusing room rentals, or reporting guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers;

    c.  Lowering security costs by not having proper security measures, including, but not limited to, employing qualified security officers to actively combat human trafficking and sexual exploitation;

88.      As a direct and proximate result of these egregious practices on the part of the Defendants, E.S. and victims of sex trafficking and exploitation like her, have been permanently injured and damaged physically, emotionally, psychologically, and financially.

## **CAUSES OF ACTION**

### **A.  COUNT ONE – 18 U.S.C §1595 ("TVPRA")**

89.      The Plaintiff E.S. incorporates each foregoing allegation.

90.      E.S. is a victim of sex trafficking within the meaning of 18 U.S.C. §1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. §1595.

91.     The Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. §1595. Specifically, the Defendants had a statutory obligation not to benefit financially from a venture that they knew, or should have known, to engage in violations of 18 U.S.C. §1591 (a).  At all relevant times, the Defendants breached this duty by participating in, and facilitating, the harboring and providing of E.S. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and commissions.

92.     The Defendants have financially benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, and maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade.  Moreover, the Defendants directly benefitted from the trafficking of E.S. on each occasion they received payment for rooms that she was being kept in at the Defendants' hotels. The actions, omissions, and/or commissions alleged in this pleading were the proximate cause of E.S.'s injuries and damages.

93.     E.S. has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendants' hotels and properties in violation of 18 U.S.C. §1591 (a).

## PRAYER FOR RELIEF

WHEREFORE based on the forgoing the Plaintiff seeks injunctive relief in the form of a judgement requiring the Defendants to institute sufficient audits, policies, rules, and requirements of their employees, agents, franchisees, contractors, and/or all others operating under their flag, logo, trademark, or advertising  umbrella to insure that the actions and activities outlined above no longer occur and may not serve in the future to jeopardize the health and safety of individuals

similarly situated  to the Plaintiff herein.

AND WHEREFORE on the basis of the foregoing, the Plaintiff requests that a jury be selected to hear this case and render a verdict for the Plaintiff, and against the Defendant, and that the jury selected award damages to the Plaintiff in an amount which will effectively prevent other similarly caused acts and adequately reflects the enormity of the Defendant's wrongs and injuries to the Plaintiff due to the Defendant's faulty conduct, including but not limited to:

a.  All available compensatory damages for the described losses with respect to each cause of action;

b.  past and future medical expenses, as well as the costs associated with past and future life care;

c.  past and future lost wages and loss of earning capacity;

d.  past and future emotional distress;

e.  consequential and/or special damages;

f.  all available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g.  punitive damages with respect to each cause of action;

h.  reasonable and recoverable attorneys' fees;

i.  costs of this action; and

j.  pre-judgment and all other interest recoverable

Further, the Plaintiff requests that the Court enter judgment consistent with the jury's verdict, and prays for any other damages and equitable relief the Court or jury deems appropriate under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

The Plaintiff demands a trial by jury on all issues so triable in this civil action.

Dated: January 8, 2020

Respectfully submitted,

THE LANIER LAW FIRM, P.C.

*/s/ W. Mark Lanier*
W. Mark Lanier
Texas State Bar No.: 11934600
WML@lanierlawfirm.com
Monica Cooper (*pro hac vice* to be filed)
State Bar No.: 24071344
Monica.Cooper@lanierlawfirm.com
10940 W. Sam Houston Pwky North, Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204

**Attorneys for Plaintiff E.S.**