# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| E.S., an individual;<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BEST WESTERN INTERNATIONAL, INC.;<br>MARRIOTT INTERNATIONAL, INC.;<br>EXTENDED STAY AMERICA, INC.; G6<br>HOSPITALITY, LLC; WYNDHAM<br>HOTELS AND RESORTS, INC.; AND<br>CHOICE HOTELS INTERNATIONAL,<br>INC.,<br><br>　　　　　　　　Defendants. | CIVIL ACTION NO.: 3:20-CV-00050-M |

## DEFENDANT MARRIOTT INTERNATIONAL, INC.'S
## REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.      INTRODUCTION .......................................................................................................... 1

II.     ARGUMENT ................................................................................................................. 2

        A.      The Amended Complaint Does Not Plead A Plausible TVPRA Claim. .............. 2

                1.      Marriott International Did Not Knowingly Participate In A
                        Trafficking Venture Engaged In Violating Chapter 77 of Title 18
                        of the United States Code. ........................................................................ 2

                2.      Marriott International Neither Knew Nor Should Have Known
                        That E.S.'s Traffickers Were Engaged In A Chapter 77 Violation. .......... 7

                3.      Marriott International Did Not Knowingly Benefit From The
                        Venture .................................................................................................... 8

        B.      The Amended Complaint Does Not Plead An Agency Relationship. ................... 9

III.    CONCLUSION ............................................................................................................ 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B. v. Marriott International, Inc.*,
No. 19-cv-05770-MAK, 2020 WL 1939678 (E.D. Pa. April 22, 2020) ...............................1, 6

*Arguello v. Conoco*,
207 F.3d 803 (5th Cir. 2000) ................................................................................................10

*Bistline v. Parker*,
918 F.3d 849 (10th Cir. 2019) ..............................................................................................5

*Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*,
2012 WL 178341 (W.D. Va. Jan. 23, 2012) .........................................................................10

*H.H. v. G6 Hospitality, LLC*,
No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019)..........................................6, 7

*J.C. v. Choice Hotels International, Inc., et al*,
20-cv-00155-WHO, Order Granting Motions to Dismiss with Leave to
Amend, ECF No. 79 (N.D. Cal. June 5, 2020) .........................................................................5

*Jane Doe 1 v. Red Roof Inns, Inc.*,
No. 1:19-cv-3840, 2020 WL 1872335, slip op. (N.D. Ga. Apr. 13, 2020)..............................5

*Jane Doe 2 v. Red Roof Inns, Inc.*,
No. 1:19-cv-3841, 2020 WL 1872337, slip op. (N.D. Ga. Apr. 13, 2020)...........................5, 9

*Jane Doe 3 v. Red Roof Inns, Inc.*,
No. 1:19-cv-3843, 2020 WL 1872333, slip op. (N.D. Ga. Apr. 13, 2020)..............................5

*Jane Doe 4 v. Red Roof Inns, Inc.*,
No. 1:19-cv-3845, 2020 WL 1872336, slip op. (N.D. Ga. Apr. 13, 2020)..............................5

*Jean Charles v. Perlitz*,
937 F. Supp. 2d 276 (D. Conn. 2013) (Opp. ) .........................................................................9

*Jones v. Royal Admin. Servs., Inc.*,
887 F.3d 443 (9th Cir. 2018) ................................................................................................10

*K.R. v. G6 Hospitality, LLC, et al.*,
19-cv-08252-VC .....................................................................................................................4

*Kerl v. Dennis Rasmussen, Inc.*,
682 N.W.2d 328 (Wis. 2004)................................................................................................10

*N.T. v. Taco Bell Corp.*,
    411 F. Supp. 3d 1192 (D. Kan. 2019) ............................................................................. 10

*Ratha v. Phatthana Seafood Co., Ltd.*,
    No. CV 16-4271, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) .......................................... 4, 7

*Ricchio v. McLean*,
    853 F.3d 553 (1st Cir. 2017) ............................................................................................. 5

*United States v. Afyare*,
    632 F. App'x 272 (6th Cir. 2016) ..................................................................................... 5

**Statutes**

18 U.S.C. §§ 1581 et seq ..................................................................................................... 3

18 U.S.C. § 1595(a) ...................................................................................................... *passim*

18 U.S.C. Title 18 Chapter 77 ................................................................................... 2, 3, 4, 7

iii

## I.       INTRODUCTION

Plaintiff's opposition to Marriott's Motion to Dismiss the First Amended Complaint (ECF No. 75, hereinafter "Opposition" or "Opp.") advances a construction of the TVPRA that turns that statute on its head. Instead of applying the plain language of the statute, which imposes civil liability only on those who *knowingly participate* in illegal activity by third party criminals, the Opposition's reading of 18 U.S.C. § 1595(a) would create liability for businesses who *fail to affirmatively prevent* such illegal activity. Contrary to the Opposition's straw man argument, Marriott International does not contend that this Court is required to import the definition of "participation in a venture" or other specific phrases from criminal sections of the TVPRA or other authorities. What *is* required is the application to Section 1595(a) of the well-settled rule of construction (cited in the Opposition itself) that "courts must give effect to every clause and word of a statute." Opp. at 7 (citing *Williams v. Taylor*, 529 U.S. 362, 364 (2000)). Among other fatal deficiencies, the Opposition's construction of Section 1595(a) runs afoul of that maxim by using the phrase "should have known" to wipe out other key words such as "participate in" and "knowingly benefit" from the statute.

The cases construing the TVPRA by the U.S. District Courts for the Southern District of Ohio and Eastern District of Pennsylvania do not support the Opposition's argument. Indeed, the latter expressly disavowed the construction that "Congress imposed duties upon businesses to affirmatively prevent sex trafficking on their hotel properties" or that "hotels (and other businesses or professions possibly earning money from trafficking)" are required "to affirmatively stop [sex] trafficking." *A.B. v. Marriott International, Inc.,* No. 19-cv-05770-MAK, 2020 WL 1939678, at *8 (E.D. Pa. April 22, 2020) (hereinafter, "*A.B.*"). Yet this is precisely the theory of liability Plaintiff relies upon throughout the First Amended Complaint (ECF No. 46,

hereinafter, the "Amended Complaint" or "FAC"). Even applying those courts' broader beneficiary theory of liability (which is *not* the correct standard applying the plain language), Plaintiff's TVPRA claim is still deficient because it fails to make factual allegations that Marriott International knew or should have known of (let alone knowingly benefitted from) E.S.'s trafficking.

No facts alleged in the Amended Complaint (or any inferences drawn therefrom) remotely justify the inflammatory claim that E.S. was trafficked for Marriott International's financial benefit. Marriott International unequivocally condemns all forms of forced labor and sexual exploitation and has been an industry leader in addressing these grave concerns. FAC ¶ 102 & n.17. The simple fact, though, is that hotel franchisors are not civilly liable for being unable to uncover and prevent every crime that occurs on their franchisees' hotel premises.

The rest of the Opposition fares no better. It avers that the Court should wait until after discovery to decide whether an agency relationship exists between Marriott International and the local Fairfield Inn hotels, but glides over (1) the absence of *factual* allegations suggesting Marriott exercised day-to-day control over the particular instrumentality of harm, and (2) the federal cases which have dismissed similarly deficient pleadings before discovery. Opp. at 15-19. The Court should dismiss the Amended Complaint in its entirety with prejudice.

## II.    ARGUMENT
### A.    The Amended Complaint Does Not Plead A Plausible TVPRA Claim.

#### 1.    Marriott International Did Not Knowingly Participate In A Trafficking Venture Engaged In Violating Chapter 77 of Title 18 of the United States Code.

The crux of the Opposition is the mistaken argument that under the 2008 amendment to the TVPRA, hospitality businesses have a "statutory duty to take necessary steps to prevent sex

2

trafficking." Opp. at 6. *See also* FAC ¶ 99 ("In 2008, 18 U.S.C. § 1595 effectively required all companies with a peculiar proximity to human trafficking for commercial sex, including each Defendant, to use reasonable measures and conduct proactive audits to ensure that they were not profiting from what they *should know* are human trafficking ventures."). This reading of the TVPRA is untenable. There is no indication from the text of the TVPRA's 2008 amendment or its legislative history that Congress intended to deputize the hotel industry with law enforcement authority or impose an affirmative duty on the industry to "conduct proactive audits" to actively investigate and police sex trafficking.

First and foremost, Plaintiff's construction is incompatible with the plain language of the statute. Section 1595(a) imposes civil liability on (*inter alia*) "whoever *knowingly* benefits, financially or by receiving anything of value from *participation* in a *venture which* that person knew or should have known *has engaged in an act in violation of this chapter*)." (emphases added). The "chapter" referred to is Chapter 77 of Title 18 of the United States Code, *i.e.*, 18 U.S.C. §§ 1581 et seq., which criminalizes personage, slavery, forced labor, sex trafficking, and similar acts. Thus, civil liability under Section 1595(a) is expressly predicated upon *knowingly* (1) benefitting from and (2) participating in (3) a *venture which* the defendant knew or should have known *was engaged in a* forced labor or sex trafficking violation.

The Opposition cites the rule that "courts must give effect to every clause and word of a statute" (Opp. at 7, internal citation omitted), yet violates that rule in two ways with respect to Section 1595(a). *First*, Section 1595(a), by its terms, applies not to a "venture" in a vacuum, but rather to one "*engaged in an act in violation of* [Chapter 77]." 18 U.S.C. § 1595(a) (emphasis added). To define "venture" for purposes of the TVPRA, the Court need only give effect to every word of Section 1595(a)—which imposes liability for participation in a venture *engaged in a*

3

*Chapter 77 violation*. There is not a single factual allegation in the Amended Complaint suggesting that Marriott International participated in any venture with E.S.'s traffickers.

*Second*, the Opposition likewise deletes the words "participate in" from the statute. In the Opposition and Amended Complaint, Plaintiff asserts that "participation" includes "failing to act," "failing to train the hotel's staff how to respond when someone is being trafficked," "failing to take proper security measures to combat sex trafficking," "fail[ing] to alert authorities" and so on. Opp. at 10; *see also* FAC ¶¶ 10, 53, 129, 152, 173, 181, 185. However, the plain meaning of "participation" requires an affirmative act. And the statute requires such "participation in a venture*"—i.e.*, a sex trafficking venture. A franchisor's receipt of a royalty fee under a license agreement based on gross revenues of a franchise business is not participation in a sex trafficking venture and cannot give rise to civil liability under the TVPRA. *Ratha v. Phatthana Seafood Co., Ltd.*, No. CV 16-4271, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017) (more than mere passive receipt of a benefit is required to satisfy TVPRA's participation requirement). Likewise, the alleged acts of the local hotel in renting a room are not and cannot support participation by Marriott International. Opp. at 9. Neither the Amended Complaint nor the Opposition contains any alleged conduct by Marriott International that could plausibly be participation in a sex trafficking venture (or even an act in "connection" to a sex trafficking venture, under the incorrect standard argued by Plaintiff). *Id.*

Similarly, and even more explicitly, the United States District Court for the Northern District of California recently found upon review of a nearly identical complaint that "the complaint does not appear to adequately allege that the [hotel] chains, who are the actual defendants in the case *participated* in that [sex trafficking] venture." *K.R. v. G6 Hospitality, LLC, et al.*, 19-cv-08252-VC, Questions for Hearing on Motion to Dismiss, ECF No. 44 (N.D. Cal. June

4

2, 2020) (emphasis added). Another court dismissed a similar TVPRA claim against Marriott, with leave to amend, noting that plaintiff's theories of liability against the hotel franchisors "seem confused." *J.C. v. Choice Hotels International, Inc., et al*, 20-cv-00155-WHO, Order Granting Motions to Dismiss with Leave to Amend, ECF No. 79, at 2 (N.D. Cal. June 5, 2020). Moreover, in granting motions to dismiss in favor of franchisors, the United States Court for the Northern District of Georgia recently held that:

> TVPRA claims require Plaintiff to allege that the Defendants *participated in ventures* that were *engaged in sex trafficking* and that they each had three separate *types of knowledge* with respect to that venture: (1) knowledge as to the benefit received from trafficking; (2) knowledge as to 'assisting, supporting or facilitation' trafficking; and (3) knowledge that the Plaintiff was either a minor or subject to force.

*Jane Doe 2 v. Red Roof Inns, Inc.*, No. 1:19-cv-3841, 2020 WL 1872337 *3, slip op. (N.D. Ga. Apr. 13, 2020) (internal citation omitted) (emphasis added).[1] The Amended Complaint fails to plead sufficiently any of these elements, but especially the second. The recent *Jane Doe* decisions comport with the recent decisions of the Courts of Appeals who have analyzed the participation element of the TVPRA. *See Bistline v. Parker,* 918 F.3d 849, 874 (10th Cir. 2019) (imposing TVPRA "venture" liability where complaint "recount[ed] in great detail" how defendants participated in "creating the intricate scheme" to enable forced labor and "were actively seeking to enforce" their co-venturer's control); *United States v. Afyare*, 632 F. App'x 272, 282 (6th Cir. 2016) (noting that "[p]articipation in a venture" requires more than "mere negative acquiescence"); *see also Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017) (venture liability sufficiently pled where complaint specifically referenced conduct by the co-venturers establishing knowledge of

---

[1] *See also Jane Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-cv-3840, 2020 WL 1872335, slip op. (N.D. Ga. Apr. 13, 2020); *Jane Doe 3 v. Red Roof Inns, Inc.*, No. 1:19-cv-3843, 2020 WL 1872333, slip op. (N.D. Ga. Apr. 13, 2020); and *Jane Doe 4 v. Red Roof Inns, Inc.*, No. 1:19-cv-3845, 2020 WL 1872336, slip op. (N.D. Ga. Apr. 13, 2020).

trafficking activity, including high-fiving traffickers and statements about "getting this thing going again"). Without an overt act, some allegation of a defendant's actual knowledge of the trafficking is required to establish participation in a venture.[2]

Lastly, even the Plaintiff's authorities do not support their sweeping construction of the statute. For example, in *A.B.*, the Court explained:

> We disagree with A.B. to the extent she seeks us to find Congress imposed duties upon businesses to affirmatively prevent sex trafficking on their hotel properties as businesses who financially benefit from trafficking through room rentals. We do not read the Act as requiring hotels (and other businesses or professions possibly earning money from trafficking) to affirmatively stop the trafficking.

*A.B.,* 2020 WL 1939678, at *8. Moreover, the Court explained:

> Marriott argues A.B. alleges only general conduct in the hotel industry regarding sex trafficking imposes liability on Marriott. It is true A.B.'s amended complaint inartfully includes numerous allegations regarding the problem of sex trafficking generally, the use of hotel and motel rooms as a venue for trafficking, efforts by private organizations and the Department of Homeland Security to combat human trafficking, and news reports on sex trafficking incidents involving other victims and other hotels. If A.B. made only these allegations, we may agree with Marriott.

*Id.* at *17. The Court went on, however, to describe allegations that were pertinent to *A.B.'s trafficking.* By contrast, the Amended Complaint here relies only on "inartfully" pleaded allegations regarding general conduct in the hotel industry and Marriott International's alleged failures to prevent trafficking. FAC ¶¶ 3, 10, 53, 129, 152, 173, 181, 185. Likewise, the Opposition misplaces reliance on *H.H. v. G6 Hospitality, LLC*, No. 2:19-cv-755, 2019 WL 6682152, at *5 (S.D. Ohio Dec. 6, 2019) for the proposition that room rentals by the staff of the local hotel to

---

[2] Even *Gilbert v. U.S. Olympic Comm.*, on which Plaintiff relies, included allegations demonstrating the co-defendants' knowledge of the alleged venture beyond that of a mere commercial transaction in the ordinary course. The "perpetrators" were alleged to have raped the victims, while the "beneficiaries" were alleged to have formed an enterprise for the express purpose of covering up the perpetrators' crimes, including by "*making false and corrupting statements to Congress.*" 423 F. Supp. 3d 1112, 1138 (D. Colo. 2019). Nothing close to that level of knowledge is alleged here, as it pertains to Marriott International.

people it knew or should have known were engaged in sex trafficking are enough to constitute "participation." Opp. at 10-11. It omits, however, important factual allegations in that case, *e.g.*:

- "Plaintiff 'was discovered by hotel cleaning staff at the Defendant 6 Columbus tied to the guest room bed and despite her desperate pleas for help, the staff ignored her.' …

- '[A] female member of the hotel housekeeping staff … discovered the Plaintiff chained up in the bathroom of the hotel room out of which she was being trafficked' and 'despite the Plaintiff's desperate pleas for help, the staff person ignored her."

2019 WL 6682152, at *3. Even applying the Southern District of Ohio's broader beneficiary theory (which this Court should *not* do, for the reasons discussed above), the allegations in this case are a far cry from constituting "red flags" at the local Fairfield Inn hotels which made it "impossible for [staff] not to notice the victimization of E.S." FAC ¶ 174. Simply put, the paucity of factual, Plaintiff-specific allegations in this case foreclose any finding that the Amended Complaint has adequately pled Marriott International's participation in a sex trafficking venture under any reading of the TVPRA.

### 2. Marriott International Neither Knew Nor Should Have Known That E.S.'s Traffickers Were Engaged In A Chapter 77 Violation.

For similar reasons, Marriott International neither knew nor should have known that E.S. was being trafficked at the local Fairfield Inn hotels. The phrase "should have known" applies only to Marriott International's knowledge of the *traffickers' violation* of Chapter 77. *See* 18 U.S.C. § 1595(a). A plaintiff must plead, proffer evidence, and ultimately prove knowledge relevant to the trafficking of the individual *plaintiff*. *Ratha*, 2017 WL 8293174, at *4. Mere generalized knowledge or negligence in relation to sex trafficking, such as the "hospitality industry's" general alleged complicity in trafficking (FAC ¶¶ 27-35, 55-57, 100, 103-04), and reports about different crimes committed against unrelated victims in other states that had nothing to do with E.S. (FAC ¶ 162(j)(i)-(v)), are not enough.

7

While the Opposition asserts that Plaintiff "alleges facts specific to her own sex trafficking" (Opp. at 12, citing FAC ¶¶ 166-171), the Paragraphs cited cannot support a reasonable inference that Marriott International knew or even should have known of E.S.'s trafficking. None of the paragraphs have anything to do with Marriott International or any of its franchisees. Most relate to actions of E.S.'s unnamed trafficker, but do not suggest (even by inference) that anyone employed by the local franchise hotels knew or should have known about what was going on inside her hotel rooms. *See* FAC ¶¶ 95-96, 99. There is no allegation of any contact between the traffickers and the staff at the local Fairfield Inn hotels, who are not Marriott employees in any event. There is likewise no allegation of any contact between E.S. and the staff at the local Fairfield Inn hotels. There are no facts to support a reasonable inference that Marriott International knew or should have known that E.S. was being victimized in her hotel room.

### 3.   Marriott International Did Not Knowingly Benefit From The Venture.

Lastly, Marriott International did not "knowingly" benefit from the illegal sex trafficking venture. The Amended Complaint alleges that Marriott International received a portion of revenues from the local Fairfield Inn hotels where E.S. was allegedly trafficked. Opp. at 4. As discussed above, however, the Amended Complaint does not allege any facts that would, if true, establish that Marriott International affirmatively knew or should have known that any portion of that revenue was derived from criminals who were trafficking E.S. at the local Fairfield Inn hotels. *See supra* Part II.A.2. The Opposition relies heavily on cases from the Southern District of Ohio for the proposition that the "knowingly benefits" element merely requires that Defendant knowingly receives a financial benefit and nothing more. Opp. at 7. As discussed above (*supra* Part II.A.1.), that court's reading of Section 1595(a) is incompatible with the text of the statute, effectively nullifying key words (here, "knowingly"). The better construction of this element is that it requires

8

"knowledge as to the benefit received *from trafficking*," and allegations supporting that element (properly construed) are conspicuously absent. *Jane Doe 2 v. Red Roof Inns, Inc.*, No. 1:19-cv-3841, 2020 WL 1872337 *3, slip op. (N.D. Ga. Apr. 13, 2020) (emphasis added).

**B.      The Amended Complaint Does Not Plead An Agency Relationship.**

The Amended Complaint alleges an agency relationship with the Fairfield Inn hotels at which E.S. was trafficked. (FAC ¶¶ 130, 162(a).) As Marriott International explained in its Motion to Dismiss, if the Amended Complaint assumes that this relationship renders Marriott International vicariously liable for E.S.'s trafficking based on an "actual and/or apparent agency relationship with" the local Fairfield Inn hotels (FAC ¶ 162(g)), that assumption is erroneous as a matter of law.

As an initial matter, the Opposition's reliance on *Jean Charles v. Perlitz*, 937 F. Supp. 2d 276, 281 (D. Conn. 2013) (Opp. at 10) undercuts its argument because the *Perlitz* court dismissed a claim for aiding and abetting under § 1595(a), finding that there is no such secondary liability available where the statute is silent.  Here too, there is nothing in the TVPRA to suggest any intention to allow secondary liability in the context of franchisor agency.  To the contrary, by its plain language, § 1595(a) extended civil liability beyond the criminal perpetrators to those who benefit from participation in ventures with the criminals – but did not include language to extend liability even further to franchisors based on the alleged participation by staff of a franchisee.

Furthermore, the factual allegations cited in the FAC and repeated in the Opposition—that Marriott International could demand conformity to brand standards, conduct periodic inspections, and terminate the agreement if the Fairfield Inn hotels failed to meet those standards—even if true, would not establish the necessary "control" required to create an agency relationship.  The cases cited in the Motion to Dismiss are instructive because they (1) applied similar principles of agency

law and (2) were decided on a motion to dismiss posture.[3] These cases also turned on the principal's control of the agent, which is consistent with the federal common law of agency that requires actual control over the particular instrumentality of the harm.[4] The Opposition admits that "Marriott is a hotel brand whose contractors / franchisees *run all of their hotels* under the Marriott brand." Opp. at 14 (emphasis added). It is those franchisees who control the day to day operations. Thus, many of the Amended Complaint's allegations actively undercut any reasonable inference that Marriott International controlled the manner and means of the operations at the Fairfield Inn hotels that was the instrumentality of the alleged harm, and nowhere are there factual allegations supporting that dispositive predicate.

## III.    CONCLUSION

For all the foregoing reasons, Marriott International respectfully requests that this Court dismiss Plaintiff's claim against Marriott International in its entirety and with prejudice and grant such other and further relief as the Court deems just and proper.

---

[3] *N.T. v. Taco Bell Corp.,* 411 F. Supp. 3d 1192, 1197 (D. Kan. 2019), is illustrative. Granting a motion to dismiss, the court found that Taco Bell's alleged control to provide rules regarding operations, oversee operations, and ensure that franchisees maintained safe working environments, were "prime examples of the type of conclusory allegations that are insufficient, under *Twombly* and *Iqbal*, to state a plausible claim." *Id.* Allegations of Marriott International's retention of control necessary to provide training and impose strict rules of operation are similarly conclusory. Opp. at 15-16. Moreover, "the imposition of quality and operational requirements by contract suggests that the franchisor does *not* intervene in the daily operation and management of the independent business of the franchisee." *N.T.*, 411 F. Supp. at 1197 (emphasis added, internal citation omitted). *See also Kerl v. Dennis Rasmussen, Inc.,* 682 N.W.2d 328, 337-42 (Wis. 2004) (concluding that "quality, marketing, and operational standards and inspection and termination rights commonly included in franchise agreements" are insufficient for the close supervisory control necessary for vicarious liability against a franchisor).

[4] *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018) (under the federal common law of agency the court looks to "the extent of control exercised by the [principal] [as] the essential ingredient.") (citation and quotation marks omitted); *Arguello v. Conoco,* 207 F.3d 803, 807 (5th Cir. 2000) (finding no agency liability where franchisor had no "participation in the daily operations of the branded stores nor that [the franchisor] participates in making personnel decisions," and because the contract language stated the franchisees were not "agents" of the franchisor); *Carnell Const. Corp. v. Danville Redevelopment & Hous. Auth.*, 2012 WL 178341, at *21 (W.D. Va. Jan. 23, 2012) (rejecting agency liability under federal common law where defendant did not have "control over the actions of which [plaintiff] complains").

Dated:      June 19, 2020             Respectfully submitted,

                                      _/s/ Jason S. Lewis_____
                                      Jason S. Lewis
                                      Tex. Bar No. 24007551
                                      James C. Bookhout
                                      Tex. Bar No. 24087187
                                      DLA Piper LLP (US)
                                      1900 N. Pearl St., Suite 2200
                                      Dallas, Texas 75201
                                      (Tel.) 214.743.4548
                                      (Fax) 972.813.6250
                                      jason.lewis@dlapiper.com
                                      james.bookhout@dlapiper.com

                                      Ellen E. Dew (admitted *pro hac vice*)
                                      DLA Piper LLP (US)
                                      6225 Smith Avenue
                                      Baltimore, Maryland 21209
                                      (Tel.) 410-580-4127
                                      (Fax) 410-580-3127
                                      ellen.dew@dlapiper.com

                                      *Attorneys for Defendant*
                                      *Marriott International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2020, a true and correct copy of the foregoing was furnished by CM/ECF to all counsel of record.

                                      */s/ Jason S. Lewis_____*
                                      Jason S. Lewis

11