IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| E.S., an individual,<br><br>               Plaintiff<br><br>v.<br><br>BEST WESTERN INTERNATIONAL, INC.;<br>MARRIOTT INTERNATIONAL, INC.;<br>ESA MANAGEMENT, LLC.; G6 HOSPITALITY,<br>LLC; WYNDHAM HOTELS AND RESORTS,<br>INC.; AND CHOICE HOTELS<br>INTERNATIONAL, INC.<br><br>               Defendants. | CIVIL ACTION FILE NO.<br>3:20-CV-00050-M |

**DEFENDANT ESA MANAGEMENT, LLC'S REPLY IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant ESA Management, LLC ("ESA"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully submits this Reply Brief in support of its Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 46).

## ARGUMENT

**I. Plaintiff's Complaint is an impermissible shotgun pleading, which fails to plead any factual allegations specific to Plaintiff's trafficking at the Arlington, Texas location.**

As set forth in ESA's Motion to Dismiss, Plaintiff's Complaint is a prototypical shotgun pleading that impermissibly groups all the Defendants together and encompasses a wide range of contentions supported by vague, conclusory allegations. The notice pleading requirement of Rule 8(a) entitles "each defendant . . . to know what he or she did that is asserted to be wrongful." *Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 2849478, at *5 (E.D. La. May 13, 2016). As such, pleadings that "lump[] all defendants together and assert identical allegations as to each, without distinction" cannot withstand a motion to dismiss. *Id.*

1

In an effort to avoid dismissal, Plaintiff misrepresents the substance of her Complaint when stating, "Plaintiff's First Amended Complaint contains allegations specific to Plaintiff and the sex trafficking of Plaintiff at the Arlington Extended Stay America." Opp., pg. 4. Notably, Plaintiff does not, and cannot, cite to a single paragraph from her Complaint to support this inaccurate statement. *See Id.* Plaintiff later references Paragraphs 17(d), 38, 44, 51, 66, 73, 91, 113, 145(c), and 163 of the Complaint when asserting that it "contains separate allegations as to each Defendant, including allegations specific to ESA." Opp., pg. 6. This assertion is not only misleading, but entirely wrong. Not only do the above-referenced paragraphs provide no insight into E.S.'s experience at the Arlington hotel, but they also mirror *identical*, conclusory allegations made against the remaining Defendants.[1] The only facts in the Complaint unique to ESA are relevant only for the purpose of establishing jurisdiction. *See* Dkt. 46, ¶¶ 17, 163.

The fact remains that ESA still does not know the identity of Plaintiff's alleged trafficker, when Plaintiff visited ESA's Arlington location, who she and her alleged trafficker interacted with at this location, what those interactions consisted of, or any prior instances of forced labor that occurred at the Arlington location such that would indicate any culpable conduct by ESA. All ESA is able to gather from the Complaint is that Plaintiff believes ESA has, at some unspecified point in time, participated in an alleged sex-trafficking venture committed by unspecified individuals. Accordingly, the Complaint fails to meet the pleading requirements of Rule 8(a) by requiring ESA to speculate as to which, if any, of the alleged transactions were ones in which it participated. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.

---

[1] *See* Dkt. 46, ¶¶ 12(e), 13(d), 14(d), 15(d), and 16(d), which asserts allegations identical to ¶ 17(d); *Id.* at ¶¶ 36, 37, 39, 40, and 41, which asserts allegations identical to ¶ 38; *Id.* at ¶¶ 42, 43, 45, 46, and 47, which asserts allegations identical to ¶ 44; *Id.* at ¶¶ 49, 50, 52, 53, and 54, which asserts allegations identical to ¶ 51; *Id.* at ¶¶ 64, 65, 67, 68, and 69, which asserts allegations identical to ¶ 66; *Id.* at ¶¶ 71, 72, 74, 75, and 76, which asserts allegations identical to ¶ 73; *Id.* at ¶¶ 89, 90, 92, 93, and 94, which asserts allegations identical to ¶ 91; *Id.* at ¶¶ 111, 112, 114, 115, and 116, which asserts allegations identical to ¶ 113; *Id.* at ¶¶ 145(a), 145(b), 145(d), 145(e), 145(f), and 145(g), which asserts allegations identical to ¶ 145(c); *Id.* at ¶¶ 153, 154, 155, 162, and 164, which asserts allegations identical to ¶ 163.

Ed. 2d 929 (2007)(A claim must contain allegations that are "enough to raise a right to relief above the speculative level.").

Plaintiff offers no reasoned response in defense of her shotgun complaint. Instead, she completely ignores all but one opinion cited in ESA's Motion and contends that her Complaint sufficiently states a claim under Section 1595(a) simply by parroting the words of the statute. In *Zucker v. Farish*, this Court defined a "shotgun pleading" as a "lengthy complaint that incorporates by reference all preceding paragraphs as it progresses through multiple counts." No. 3:18-CV-01790-K, 2018 WL 6570867, at *3 (N.D. Tex. Dec. 12, 2018).

> Complaints of this type set forth an excessive number of facts before alleging that all the provided facts support various counts in the complaint, with the result that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies.

*Id.* (internal quotations omitted). While making no attempt to distinguish the remaining cases cited in ESA's brief,[2] Plaintiff contests the applicability of this Court's opinion in *Zucker* by focusing on the fact that it involved allegations of fraud, which invokes the Rule 9(b) heightened pleading standard. Opp., pg. 7. Yet, Plaintiff overlooks the fact that this Court's discussion of shotgun pleadings in *Zucker* was in reference to "Rule 8(a)'s insistence upon 'simple, concise, and direct' allegations." Unlike Rule 9(a), Rule 8(a) is not a "heightened" pleading standard. In fact, when this Court defined shotgun pleadings in *Zucker*, it cited to *Moore v. Carrington Mortg. Servs., LLC*, 2018 WL 3853711, at *3-*4 (N.D. Tex. July 17, 2018) which did not involve a claim for fraud. Accordingly, this Court's opinion in *Zucker*, when read in its entirety, as well as the other cases ESA has cited which Plaintiff failed to even address, leads to the

---

[2] See extensive authority governing shotgun pleadings cited by ESA on pages 2-6 of its Motion to Dismiss.

inescapable conclusion that Plaintiff's Complaint fails to meet the basic pleading requirements imposed by this Court and the Federal Rules of Civil Procedure.

In a final attempt to defeat the standing deficiencies of her Complaint, Plaintiff now urges the Court to ignore all of the long-standing precedent within the Fifth Circuit cited in ESA's Motion and, instead, rely upon two factually distinct opinions issued by the Northern District of California[3] and Western District of Washington[4]. Opp., pg. 5. Plaintiff cites *B.M.* and *ML* in support of her theory that "[o]ther district courts, reviewing similar complaints, have not found similar complaints to be impermissible shotgun pleadings." *Id.* Setting aside the limited utility in reviewing authority from outside this Circuit when binding precedent in this jurisdiction already exists, even a mere cursory reading of both opinions reveals that Plaintiff's reliance is misplaced. Unlike the Complaint here, the complaints in *B.M.* and *ML* actually alleged *relevant* facts specific to each defendant and location.

For example, the plaintiff in *B.M.* was a minor and, therefore, was not required to show she was trafficked through force, fraud, or coercion. *B.M.*, No. 5:20-cv-00656-BLF, Dkt. 80. Further, the complaint in *B.M.* alleged that for two years, B.M.'s traffickers rented two adjoining rooms at the Super 8 and Clarion Inn; "Clarion Inn employees threatened to eject [B.M.] and her traffickers, but never took further action"; despite these threats, B.M. continued to be trafficked on the premises; each day a procession of adult men would enter minor B.M.'s room, stay for 15 minutes to an hour, and then leave; these adult men were typically middle-aged men of a variety of races, "none of whom appeared to be age-appropriate contemporaries of the minor plaintiff"; and none of these men acted as a guardian or relative to the minor plaintiff. *Id.*, at *5-6. And, while the complaint in *B.M.* alleged more specific facts than the Complaint here, the

---

[3] *B.M. v. Wyndham Hotels & Resorts, Inc. et. al.*, No. 5:20-cv-00656-BLF, Dkt. 80 (N.D. Cal. July 30, 2020).
[4] *ML v. Craigslist Inc., et al.*, No. 3:19-cv-06153-BHS-TLF (W.D. Wa. Apr. 17, 2020).

4

court still granted the defendants' motions to dismiss in part with leave to amend, and instructed the plaintiff "to add as many details as possible about her stays at *each location*." *Id*., at *8. Here, the Complaint does not include any details about Plaintiff's stay at the Arlington location and, therefore, would not survive a motion to dismiss even under *B.M. See Id.*

Similarly, *ML* involved the sex trafficking of a minor plaintiff, which started when she was just twelve years old. *ML*, No. 3:19-cv-06153-BHS-TLF at *3. The complaint in *ML* alleged the following facts against *one* hotel brand involving only *one* of its locations: (1) the traffickers held ML "for over one year from 2007 to 2008" when she was "16 and 17 years old," (2) the traffickers advertised ML for commercial sex at the "Howard Johnson in Kent and would pay Wyndham and 2005 Investors LLC to rent the rooms," (3) the purchasers would arrive at the hotel and could be "seen waiting in the parking lots, common areas and hallways of the hotel," (4) hotel staff spoke with ML multiple times "to warn her to keep her activities more discrete or they would have to kick her out of the hotel," and (5) "[p]olice contacted and spoke with motel staff regarding the minor [ML]." *Id*., at *16. Here, Plaintiff alleges conclusory and identical facts against *six* separate hotel brands with respect to her alleged trafficking in at least *thirteen* different locations[5]. Dkt. 46, at ¶ 7. Clearly, *B.M.* and *ML* did not involve "similar complaints."

In any event, there is no need for this Court to look to opinions from other jurisdictions since the line of opinions within this Circuit that are cited in ESA's Motion provide this Court the analysis and direction necessary to fully adjudicate ESA's Motion. Accordingly, having failed to sufficiently plead her claim, Plaintiff's Complaint should be dismissed.

---

[5] Baymont Inn®, Days Inn®, Super 8®, Microtel®, La Quinta®, Best Western®, Wingate Hotel®, Howard Johnson®, Fairfield Inn and Suites®, Extended Stay America®, Studio 6®, La Quinta® and Quality Inn®).

**II.     Plaintiff fails to plead any specific factual allegations demonstrating that Plaintiff was trafficked at ESA after Section 1595(a) was in effect, or that Plaintiff's Complaint is not barred by the 10-year Statute of Limitations.**

As discussed in Section II of ESA's opening brief, it was not until December 23, 2008, that the TVPRA's civil remedy provision allowed trafficking victims to bring a civil action against "whoever knowingly benefits … from participation in a venture which that person knew or should have known has engaged in" human trafficking. 18 U.S.C. § 1595(a). However, the 2008 amendments to the TVPRA do not apply retroactively; thus, Plaintiff may only bring claims under Section 1595(a) for conduct that occurred after December 23, 2008.[6]

The vast majority of the Complaint alleges identical conduct by all the Defendants – which purportedly occurred "approximately" between 2006 and 2011—with nothing to differentiate the time, place, or identities of those involved. Plaintiff's TVPRA claim as alleged (with no indication of when the trafficking actually occurred at the ESA hotel other than an "approximate" 6-year range from 2006 – 2011) lacks sufficient facts to support an inference that ESA knowingly benefitted from a sex trafficking venture on or after December 23, 2008. As such, there is no more than a mere possibility that the purported conduct by ESA occurred on or after December 23, 2008, which is not enough to state a plausible claim. *Lowe v. Dallas*, No. 3:17-CV-704-G-BN, at *9 (N.D. Tex. Oct. 17, 2017)("[T]here is no 'more than a mere possibility of misconduct,' which, of course is not enough to state a plausible claim."); *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-3435, at *6 (S.D. Tex. June 22, 2015)("A complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish their conduct.").

---

[6] *See Gonzalez v. CoreCivic, Inc.*, No. 1:18-CV-169-LY, 2019 WL 2572540, at *3 (W.D. Tex. Mar. 1, 2019); *Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS (NLS), 2018 WL 2193644, at *13 (S.D. Cal. May 14, 2018); *Griffin v. Alamo*, No. 4:14-CV-4065, 2016 WL 7391046, at *4 (W.D. Ark. Dec. 21, 2016); *St. Louis v. Perlitz*, No. 3:13-CV-1132 (RNC), 2016 WL 1408076, at *4 (D. Conn. Apr. 8, 2016); *Cruz v. Maypa*, 773 F.3d 138, 144 (4th Cir. 2014).

In her Opposition, Plaintiff conflates two issues: (1) the retroactive application of the 2008 amendment, and (2) the tolling of the applicable statute of limitations. *See* Opp., pg. 7-8 ("[T]he statute of limitations for Plaintiff's claim was tolled from 2006-2008 due to the force and coercion Plaintiff underwent by her trafficker."). The statute of limitations for Plaintiff's claim could not possibly have been tolled from 2006-2008, given that such a claim under the "financial benefit" prong of the TVPRA did not yet exist. Furthermore, even if the claim was tolled through 2008 as claimed by Plaintiff in her brief,[7] the statute of limitations under 18 U.S.C. § 1595 is 10 years. Thus, the Complaint filed in 2020 is time-barred. Additionally, there are no specific allegations as to when the trafficking actually occurred at ESA as opposed to the other Defendant hotels. So, there is no way to tell from the Complaint beyond a mere possibility if the trafficking even continued at ESA into 2010, which is required to bring Plaintiff within the 10-year statute of limitations. As such, there is no basis for Plaintiff to show that the Complaint against ESA is not barred by the 10-year statute of limitations under the TVPRA.

Plaintiff has offered no meaningful response to the argument raised in Section II of ESA's Motion. As such, ESA respectfully rests on its argument made previously and requests this Court to dismiss Plaintiff's TVPRA claim against ESA for failure to state a claim.

### III. Plaintiff fails to state a plausible claim against ESA for allegedly violating the TVPRA, 18 U.S.C. § 1595.

#### A. Plaintiff fails to allege that ESA *knowingly* benefited from its participation in the alleged sex-trafficking venture.

To state a viable claim under § 1595(a), Plaintiff must demonstrate that ESA benefitted from the alleged sex-trafficking venture with actual knowledge that such benefit derived from its participation in a commercial sex venture. In determining whether a defendant knowingly

---

[7] *See* Opp., pgs. 7-8 ("[T]he statute of limitations for Plaintiff's claim was tolled from 2006-2008 due to the force and coercion Plaintiff underwent by her trafficker.").

7

benefited from its participation in a sex-trafficking venture, the plaintiff must demonstrate that the trafficker(s) "provided … benefits to [the defendant] *because of* [the defendant's alleged] facilitation of [] sexual misconduct." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019). Plaintiff attempts to distinguish this case from *Geiss* reasoning that "the plaintiffs' claims in *Geiss* were brought against beneficiary of trafficking who was alleged to have directly violated the criminal statute as well." Opp., pg. 16. However, a complete reading of the *Geiss* opinion demonstrates that Plaintiff conveniently disregarded the portion of the opinion which states, "Apart from the constructive knowledge provision, the operative language of the TVPA civil remedy and underlying criminal statute are identical. I therefore consider the 'benefits' element to have the same content in both provisions." *Geiss*, 383 F. Supp. 3d at 169, n. 5. Accordingly, ESA stands on the position stated in its opening brief—namely, that liability under Section 1595(a) requires actual knowledge that the benefit derived directly from the defendant's participation in a sex-trafficking venture. *Id.*

### B.  Plaintiff fails to allege that ESA *participated* in a sex-trafficking venture.

Section 1595(a) allows trafficking victims to bring a civil action against "whoever knowingly benefits financially … from *participation* in a *venture which* that person knew or should have known has engaged in *an act in violation of this chapter*." (emphasis added). That is, civil liability under Section 1595(a) is predicated on the violation of Chapter 77 of Title 18, which criminalizes personage, slavery, forced labor, sex trafficking, and similar acts. Plaintiff brings this action against ESA pursuant to § 1595(a), alleging that it knowingly benefited from its "*participation in a venture*" which it knew or should have known engaged in an act in violation of Section 1591(a) of Chapter 77—sex trafficking by force, fraud, or coercion. Dkt. 46, at ¶ 200. Congress defined "participation in a venture" as "knowingly assisting, supporting, or facilitating" a venture. 18 U.S.C. § 1591(e)(4). Thus, for ESA to be liable under Section 1595(a),

8

Plaintiff must establish that ESA knowingly assisted, supported, or facilitated a venture which ESA knew or should have known has engaged in sex trafficking by force, fraud, or coercion.

In her Opposition, Plaintiff cites *Ricchio v. McLean* in an attempt to mislead this Court into supporting her theory that "participation" under §1595(a) does not require actual knowledge of the sex-trafficking itself, stating that the First Circuit found, "among other things," the business relationship between the trafficker and hotel to be sufficient. Opp., pg. 14-15. However, Plaintiff overlooks the key allegations that governed the court's decision, which involved significant "coercive and brutal behavior to a physically deteriorating [plaintiff], who pleaded for help," as well as specific interactions between the trafficker and the motel operators (e.g., "exchanging high-fives in the motel's parking lot while speaking about 'getting this thing going again'"). *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017). Certainly, such fact-specific allegations might be sufficient to plead a claim under §1595(a); however, no such allegations have been plead here.

In fact, the *Ricchio* decision lends greater support to ESA's position that "participation" under § 1595(a) requires actual knowledge and an affirmative act. This is shown by the court's construction of the plaintiff's claims:

> Claim 2, under §§ 1590 and 1595(a): In continuing to rent [the trafficker] the room after [his] conduct was manifest, the [motel operators] *knowingly* harbored [the plaintiff] at the [the defendant motel] *for the purpose of* [the trafficker's] object of obtaining her sexual labor or services. See § 1590(a). …
>
> Claim 3, under §§ 1591 and 1595(a): The defendants knowingly benefitted from the venture with [the trafficker], since they knew, or at least recklessly disregarded, the factual prospect that *force or threats of force would be used* to cause [the plaintiff] to engage in a commercial sex act. See § 1591(a)(2).

*Id.* (emphasis added). Indeed, the *Ricchio* court employed both the mental and active conditions of § 1591(e)(4) when it analyzed the plaintiff's claims under § 1595(a). *See Id.*

Plaintiff also cites the competing line of cases, which hold that applying the "participation in a venture" definition from the criminal liability section of the TVPRA to the civil remedy section "would void the 'should have known' language in the civil remedy" section. *B.M.*, No. 5:20-cv-00656-BLF, Dkt. 80 at *3. For a number or reasons, this idea is flawed. Even if this Court reads the "participation" element of § 1595(a) to require an overt act with actual knowledge, the "should have known" language will still carry legal effect. It is entirely possible for a person to knowingly assist, support, or facilitate a commercial sex venture without being liable under § 1595(a)—this is when the "should have known" language comes into play. By incorporating the "should have known" language in § 1595(a), Congress contemplated a difference between a person who reasonably believed the commercial sex acts were performed voluntarily and a person who should have known such acts were wrongfully induced. For example, a person who *knowingly* assists a prostitution ring would not be liable under § 1595(a) if he reasonably believes that the commercial sex acts are performed without force, fraud, or coercion. This is consistent with Congress' decision to require the Government to prove either that the sex trafficking victim was a minor or that the defendant knew that force, fraud, or coercion would be used against the victim. 18 U.S.C. § 1591(a).

Finally, Plaintiff's construction of § 1595(a) is incompatible with the plain language of the relevant statutes. Congress explicitly defined the phrase "participation in a venture" within Chapter 77. *See* 18 U.S.C. § 1591(e)(4). If Congress intended to ascribe different meaning to "participation in a venture" in a succeeding section of the same chapter, it would have explicitly done so. Thus, in keeping with the plain language of the statute and Congress' clear intent,

10

liability under § 1595(a) requires more than "mere negative acquiescence" in, or a failure to stop, the alleged venture—it requires an overt act. *Doe 1 v. Red Roof Inns, Inc.*, No. 1:19-CV-03840-WMR, 2020 WL 1872335 (N.D. Ga. Apr. 13, 2020).[8] Plaintiff's Complaint does not allege a single affirmative act taken by ESA; rather, her allegations rely solely on ESA's "failure" to act,[9] which is insufficient as a matter of law to establish "participation" for purposes of establishing liability under § 1595(a).

### C. Plaintiff fails to plead any facts demonstrating that ESA knew or should have known that Plaintiff was being trafficked through force, fraud, or coercion.

Allegations that a defendant knew or should have known about commercial sex activity, absent force or undue influence, is not sufficient to sustain an action under § 1595(a). *See, e.g., Doe 1*, No. 1:19-CV-03843-WMR, at *3 ("[T]he statute targets commercial sex activity that is forced or coerced; it does not address commercial sex activity generally."). Plaintiff generally pleads that "ESA breached [its] duty by participating in, and facilitating, the harboring and providing of E.S. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and commissions." Dkt. 46, at ¶ 200. Other than parroting the language of the statute, Plaintiff has not identified any fact that would suggest ESA had actual or constructive knowledge of any harm, threat, or undue influence against Plaintiff at the Arlington location.

Plaintiff bases her entire claim on a number of generalized reports about the sex-trafficking and hospitality industries and several articles reporting three out-of-state instances of sex-trafficking all of which occurred at least six years *after* Plaintiff's alleged trafficking ended. Dkt. 46, at ¶¶ 27-35, 95-114, 130-132, 163(j)(i)-(iii). However, as noted in Section III.B. of

---

[8] *See also Doe 3 v. Red Roof Inns, Inc.,* No. 1:19-CV-03843-WMR, 2020 WL 1872333 (N.D. Ga. Apr. 13, 2020); *Doe 4 v. Red Roof Inns, Inc.,* No. 1:19-CV-03845-WMR, 2020 WL 1872336 (N.D. Ga. Apr. 13, 2020); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018); *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016); *United States v. Longoria*, 569 F.2d 422, 425 (5th Cir. 1978); *Geiss*, 383 F. Supp. at 169; *In re S. White Transp., Inc.*, 725 F.3d 494, 497 (5th Cir. 2013); *Ratha v. Phatthana Seafood Co.*, No. CV 16-4271-JFW (ASX), 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017).

[9] Dkt. 46, ¶¶ 3, 10, 57, 66, 129, 152-164, 181, 185.

11

ESA's Motion, generalized industry practice or understanding is insufficient to impute knowledge to ESA of any of the specific events that allegedly occurred at its Arlington location.[10] Further, three reports of sex-trafficking from other states in the Northeast and Midwest, which **post-date** Plaintiff's alleged trafficking, is not sufficient—let alone possible—to put the Arlington location on notice that Plaintiff was being trafficked through force, fraud, or coercion. In her Opposition, Plaintiff ignores the arguments and authority cited in ESA's Motion and continues to rely on the same conclusory allegations, general industry-wide knowledge, and unrelated news reports to support her position that "ESA knew or should have known that Plaintiff was being trafficked at its hotel." *See* Opp., pg. 17-18.

In fact, in a recent opinion issued by the United States District Court for the Northern District of California, the court cited *Ricchio* and *M.A. v. Wyndham Hotels & Resorts, Inc.* when it held that the plaintiff failed to allege facts sufficient to show that the hotel employees were on notice of the alleged trafficking. *J.B. v. G6 Hospitality, LLC, et al.*, No. 19-cv-07848-HSG, 2020 WL 4901196 (N.D. CA. Aug. 20, 2020). The court reasoned that:

> [*Ricchio* and *M.A.*] highlight that allegations that the victim sought help and was seen by employees with physical injuries or other facts *suggesting coercion* allow courts to infer that motel or hotel employees should have known that human trafficking was occurring, as opposed to other criminal conduct, *such as prostitution*.

*Id.* (emphasis added). Without cognizable facts suggesting sexual misconduct through *coercion*, "as opposed to other criminal conduct, such as prostitution," Plaintiff likewise fails to allege facts sufficient to show ESA employees were on notice of Plaintiff's alleged trafficking. *See Id.*

---

[10] *See, e.g., Doe 1*, 2020 WL 1872335, at *1 (striking allegations from complaint concerning general knowledge about sex trafficking in the hotel industry); *Ratha*, 2017 WL 8293174, at *4 ("[G]eneral reports about human trafficking in Thailand and letters by advocacy groups … criticizing the working conditions at Phatthana's Songkhla factory … [was not sufficient] to demonstrate that Rubicon or Wales knew or should have known that human trafficking existed at Phatthana's Songkhla factory.").

## **CONCLUSION**

For the foregoing reasons, this Court should grant Defendant ESA's Motion to Dismiss and dismiss all claims asserted against Defendant ESA with prejudice.

Respectfully submitted this 31st day of August, 2020.

                                    WEINBERG, WHEELER, HUDGINS,
                                       GUNN & DIAL

                                */s/ Patrick B. Moore*
                                Patrick B. Moore (*admitted pro hac vice*)
                                Georgia Bar No. 520390
                                Christopher T. Byrd (*admitted pro hac vice*)
                                Georgia Bar No. 100854
                                Shubhra R. Mashelkar (*admitted pro hac vice*)
                                Georgia Bar No. 475388

3344 Peachtree Road, NE            Sarah J. Unatin (*admitted pro hac vice*)
Suite 2400                                          Georgia Bar No. 953061
Atlanta, Georgia  30326
Telephone (404) 876-2700             *Counsel for Defendant ESA Management, LLC*
Facsimile (404) 875-9433
PMoore@wwhgd.com
CByrd@wwhgd.com
SMashelkar@wwhgd.com
SUnatin@wwhgd.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 31, 2020, a true and correct copy of the foregoing was furnished by CM/ECF to all counsel of record.

*Counsel for Plaintiff*
W. Mark Lanier
Monica Cooper
THE LANIER LAW FIRM, P.C.
10940 W. Sam Houston Pwky North
Houston, TX 77064
WML@lanierlawfirm.com
Monica.Cooper@lanierlawfirm.com

Charla G Aldous
ALDOUS WALKER LLP
4311 Oak Lawn Ave., Ste 150
Dallas, TX 75219
caldous@aldouslaw.com

Paul Pennock
WEITZ LUXENBURG PC
700 Broadway
New York, NY 10003
ppennock@weitzlux.com

*Counsel for Best Western Int'l*
Nicole Ordonez
Amber Rochelle Pickett
Nichol L Bunn
LEWIS BRISBOIS BISGAARD & SMITH LLP
2100 Ross Ave., Ste 2000
Dallas, TX 75201
nicole.ordonez@lewisbrisbois.com
amber.pickett@lewisbrisbois.com
nichol.bunn@lewisbrisbois.com

Karen L Campbell
LEWIS BRISBOIS BISGAARD & SMITH LLP
77 Water St., Ste 2100
New York, NY 10005
karen.campbell@lewisbrisbois.com

*Counsel for G6 Hospital*
Isabel Andrade Crosby
DLA PIPER LLP (US)
1900 North Pearl St., Ste 2200
Dallas, TX 75201
isabel.crosby@dlapiper.com

Angela C Agrusa
Shannon E Dudic
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067-4704
angela.agrusa@dlapiper.com
shannon.dudic@dlapiper.com

*Counsel for Marriott Int'l*
Jason S Lewis
James C Bookhout
DLA PIPER
1900 N Pearl St., Ste 2200
Dallas, TX 75201
jason.lewis@dlapiper.com
james.bookhout@dlapiper.com

Ellen E Dew
DLA PIPER (US) LLP
6225 Smith Avenue
Baltimore, MD 21209
ellen.dew@dlapiper.com

*Counsel for Wyndham Hotels and Resorts*
Allissa Pollard
DLA PIPER LLP (US)
1000 Louisiana St., Ste 2800
Houston, TX 77002-5005
allissa.pollard@dlapiper.com

David S Sager
DLA PIPER LLP US
51 John F Kennedy Pkwy, Ste 120
Short Hills, NJ 07078-2704
david.sager@dlapiper.com

*Choice Hotels Int'l*
Katriel Chaim Statman
BAKER DONELSON
1301 McKinney Street, Suite 3700
Houston, TX 77010
kstatman@bakerdonelson.com

Sara M Turner
BAKER DONELSON
420 20th St. N., Ste 1400
Birmingham, AL 35203
smturner@bakerdonelson.com

                                      */s/ Patrick B. Moore*
                                      Patrick B. Moore